## GODFREY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 12, 1905.)

1. MUNICIPAL CORPORATIONS—STREETS—OBSTRUCTIONS—NEGLIGENCE — QUESTIONS FOR JURY.

Whether a contractor responsible for an obstruction in a city street negligently failed to display a sufficient light thereon to warn travelers *held*, under the evidence, a question for the jury.

2. SAME—NEGLIGENCE OF CONTRACTOR—LIABILITY OF CITY.

Where a contractor engaged in paving a city street created an obstruction under a permit from the city, the city was jointly liable with the contractor for any injury resulting to a traveler on the street from the failure of the contractor to properly guard the obstruction.

3. SAME—INJURY TO TRAVELER—CONTRIBUTORY NEGLIGENCE.

A person driving along a city street has a right to assume that the city has performed its duty, and that the street is reasonably safe for travel.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 1678.]

4. SAME.

Whether one driving on a city street at night, and injured by colliding with an insufficiently lighted obstruction, was guilty of contributory negligence, *held*, under the evidence, a question for the jury.

5. SAME—ACTIONS—EVIDENCE.

In an action against a city for injuries to a traveler on the streets, caused by the failure of a paving contractor to properly guard an obstruction created by him, the contract between the city and the contractor was properly admitted in evidence to show the relations which existed between them.

Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Almira Godfrey, as administratrix of the estate of James W. Godfrey, deceased, against the city of New York. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.

Frank S. Black, for respondent.

INGRAHAM, J. On the evening of November 9, 1901, the plaintiff's intestate was driving upon St. Nicholas avenue, at the intersection of St. Nicholas avenue and 153d street, in the city of New York, and ran into a heap of broken stone, was thrown from his wagon, and killed; and the plaintiff, as his administratrix, sues to recover the damages sustained by his widow and next of kin. The jury found a verdict for the plaintiff, and from the judgment entered thereon the defendant, the city of New York, appeals.

Upon the trial it appeared that on the 21st day of May, 1901, the city of New York had made a contract with the Hastings Paving Company to pave with asphalt the roadway of 153d street from St. Nicholas avenue to Amsterdam avenue, in the city of New York; that this paving was to commence at St. Nicholas avenue, and run west to Amsterdam avenue, and the contract required the contractor to remove the existing pavement, to lay a concrete foundation, and upon this concrete foundation to place an asphalt block pavement. The contract contained the following provision:

"(J) That the contractor will observe the law and all ordinances of the Municipal Assembly in relation to obstructing the streets, keeping open passageways and protecting the same where they are exposed and would be dangerous to the public travel. * * * That during the performance of the work herein set forth the contractor will place proper guards upon and around the same for the prevention of accidents, and at night will put up and keep suitable and sufficient lights."

The specifications contained the following provision:

"The materials for construction shall not be brought to or deposited on the street in quantities greater than is necessary for convenient working, and shall be so deposited as to cause the least possible obstruction to streets and sidewalks, as may be determined by the Commissioner."

Some time before November 9, 1901, the contractor had commenced his work under this contract, and had removed the old pavement from the street, to lay the concrete foundation. This concrete foundation was to be made of broken stone and Portland cement, and on Wednesday, November 6, 1901, the contractor dumped at the intersection of St. Nicholas avenue and 153d street a few loads of broken stone, about one-half of which was used up on the following day (Thursday). It does not appear whether this stone that was dumped there on Wednesday was dumped in the roadway of St. Nicholas avenue or not, but there is no evidence that on Friday morning there was any serious obstruction to St. Nicholas avenue, or that the pile of stone with which the plaintiff's

intestate collided on the night of November 9th was then in the street. On the contrary, I think the evidence is clear that the stone was placed there on the following day. On Friday, November 8th, the superintendent of street opening, paving, and repaving gave to the contractor the following permit:

"Permission is hereby given to the Hastings Pavement Company to place paving material at the intersection of Amsterdam and St. Nicholas Avenues and 153rd Street, for use on 153rd Street.
"[Signed]    Jacob C. Wund.
"Superintendent, Street Openings, Paving & Repaving."

On the same day that this permit was given, the contractor dumped on St. Nicholas avenue about 25 loads of this broken stone. This was dumped in the roadway extending out into the avenue, covering about one-half of the roadway. At its outer edge the pile of stone was one or two inches deep, and increased in thickness as it extended westerly until it became two to four feet high. This pile was made by the teams driving up from St. Nicholas avenue and dumping stone upon the top. There was also placed in the roadway of St. Nicholas avenue, just north of this pile of stone, a steam roller, used by the contractor in putting down this pavement. About half past 4 o'clock in the afternoon of Saturday, November 9th, the watchman employed by the contractor placed a light upon the steam roller, and a red lantern upon this pile of stone. There is some dispute about the location of this lantern upon the pile of stone. One witness, who was watchman in charge of an adjoining building, testified that, as the wind was blowing very hard, they placed it in a hole in the pile of stone, to protect the light from the wind; that the lantern was blackened with smoke, and had a hole in it, that was covered with paper, but that he could see the light from across the avenue. The plaintiff's intestate was on the afternoon of November 9, 1901, in the Suburban Club, located at Depot Lane, 176th street, overlooking the Hudson river. At about 25 minutes after 5 o'clock, he, with his companion —a Mr. Morgan, who was a witness—started to drive home. Upon their way down they drove into St. Nicholas avenue at 161st street—the plaintiff's intestate on the right side of the wagon, driving, and his companion on the left—continuing down St. Nicholas avenue in the middle of the roadway. After passing 155th street, Morgan saw a white light upon the right-hand side of the avenue, when the plaintiff's intestate pulled his horse over to the left side of the road. In front there was a large furniture van going down, and the plaintiff's intestate attempted to pass this van upon the left, between the van and the east curb. After pulling over to the left side of the van to pass it, it appeared that there was not room enough between the van and the curb, and so the plaintiff's intestate pulled his horse back, and started to pass the van on the right towards the west. After pulling to the right or westerly side of the van, he started on again, when the horse ran upon this pile of broken stone. The horse was then going about seven miles an hour. The van at that time was in front of a lamp-post, and the street in front of the van was in a shadow cast by the van, and

the spot where they started to drive around the van was in this shadow. The witness did not see the pile of stone, but he testified that he was then looking at the van; the van being to the left of them as they attempted to pass. It had been a cloudy afternoon, and it was quite dark at the time of the accident. The wagon ran upon the stone, the horse gave a jump, and the occupants of the wagon were thrown out. The plaintiff's intestate was found on the southerly crosswalk of 153d street, his skull fractured, and death resulted. There were one or two witnesses called for the plaintiff who testified as to this stone being dumped in the roadway several days prior to the accident, but none of them were certain about it, and, upon the whole evidence, I think it clear that this pile of stone, as it existed on Saturday night, was dumped there on Friday; that the stone that had been dumped in the roadway prior to that time had been substantially used up before the large mass of stone was dumped on Friday; and that it was this stone which was dumped on Friday that created the pile into which the plaintiff's intestate ran, and which caused the accident.

I think that it was satisfactorily proven that there was one red light on this pile of stone before the accident; but I think it was a question for the jury to say whether this obstruction in the street was sufficiently lighted to warn persons using the street of the existence of the obstruction, and that therefore there was a question of fact for the jury, as to whether the person responsible for the obstruction was guilty of negligence.

In Snowden v. Town of Somerset, 171 N. Y. 99, 63 N. E. 952, the obligation upon a municipal corporation or public officer who is responsible for properly guarding an excavation in a street is discussed, and it was held that:

"It was therefore the obvious duty of the highway commissioner to protect this place of danger with suitable and sufficient lights, guards, or barricades. The necessity for some degree of protection was evidently appreciated by the highway commissioner, for he attempted to guard against accident by placing the tile which had been taken out of the excavation across the traveled part of the highway in the manner indicated. That the so-called barricade did not serve the purpose for which it was intended is shown by the result. Had there been no attempt to barricade or guard this place of danger, the highway commissioner would have been clearly guilty of negligence. * * * The question presented on the facts disclosed by the record is whether the defendant's highway commissioner exercised reasonable care and prudence in attempting to guard it. Could it be held, as matter of law, that the defendant is liable simply because the barricade proved to be insufficient? Certainly not. Can the court hold, as a legal proposition, that the highway commissioner had done his full duty, because there was evidence that it had not been customary for his predecessors in office to use lights in condition with barricades? We think not. The night was dark. A jury would have been authorized to find that the barricade could not have been seen without a light. The plaintiff and her husband had the right to assume that the highway was safe. * * * It was the duty of the highway commissioner to guard against such dangers as could or ought to have been anticipated or foreseen in the exercise of reasonable prudence and care."

In this case the officers of the defendant recognized that proper lights or barricades were necessary when obstructions were created in the adjacent streets. The contract imposed upon the contractor

the duty of furnishing such lights or barricades, and the contractor undertook to perform this duty. He placed one red lamp upon this large pile of stone, which there is evidence to show was quite dim, and placed in a sheltered position to protect it from the wind. There is no satisfactory evidence as to just how far this light could be seen by a person approaching the pile of stone from the north, and, as a matter of fact, the jury could have found that it was not seen by the persons in the wagon approaching from that direction. There was a question, therefore, for the jury, as to whether or not this was a sufficient warning of the existence of this obstruction in the street, or whether there were exercised reasonable care and prudence in guarding the obstruction, so that persons using the highway could avoid it.

The action, however, is against the municipal corporation, and not against the individual who had created the obstruction, and whose duty it was to properly protect it. If the liability of the defendant depended upon the negligent performance of the usual obligations imposed upon a municipal corporation to keep this street in a reasonably safe condition, I do not think the evidence would justify a verdict against the defendant. This pile of stone, in the position in which it was on the night of the accident, had been placed there the day before. There is no evidence that the city had any express notice of this obstruction in the street as it existed on the night of the accident, so that it was required to remove it, and I do not think the time was sufficient to justify a finding that the city was negligent in not knowing the condition of the street and removing the obstruction. The city had, however, undertaken to pave 153d street, which crossed St. Nicholas avenue at this point, and its contractor was engaged in laying such pavement. The specifications upon which that contract was made provided that:

"The materials for construction shall not be brought to or deposited on the street in quantities greater than is necessary for convenient working, and shall be so deposited as to cause the least possible obstruction to streets and sidewalks, as may be determined by the Commissioner."

Under the provisions of this specification, upon Friday, November 8th, the contractor received permission "to place paving material at the intersection of Amsterdam and St. Nicholas Avenues and 153rd Street, for use on 153rd Street," and it was in pursuance of this permission that the contractor was allowed to create this obstruction on St. Nicholas avenue. A police officer on this beat testified that when the contractor commenced to place this stone in St. Nicholas avenue he was shown this permit, and that it was in consequence thereof that he allowed the stone to be dumped there. Thus it was with the direct permission of the city and the action of the police officer that the obstruction was created. It was at "the intersection of St. Nicholas Avenue and 153rd Street" that the contractor was permitted to place this paving material. "Intersection" is defined to be "a place of crossing; the point where two lines or the lines in the two surfaces cross each other" (Standard Dictionary); and thus the contractor was permitted to place paving materials upon the point where these two streets (153d

street and St. Nicholas avenue) crossed each other, and this was exactly where the contractor dumped this material and created the obstruction in St. Nicholas avenue. I think the permit was sufficient to justify the contractor in placing this paving material upon the roadway of St. Nicholas avenue, and that the obstruction was the joint act of the city in granting the permit and the contractor in placing it there. Under such circumstances, it is now clearly settled that the municipal corporation is jointly liable with the contractor for any injury that results from a lack of properly guarding the obstruction.

In Cohen v. The Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, the injury was caused by a wagon which had been placed in a public street under a permit granted by the city of New York, and it was held that by granting that permit the city became a partner in the erection and continuance of such nuisance; that, under such circumstances, "the defendant must be held liable the same as if it had itself maintained the nuisance, for the owner of the wagon was nothing more than an agent through whom the defendant did this unlawful act"; that "in a case like this, where no obstruction would have existed but for the wrongful conduct of defendant, it must be held responsible for the damage which is caused by reason of the obstruction, even though it might not have happened if the licensee had been careful in regard to the manner in which he exercised the assumed right granted him by the license"; and that "the defendant, under these circumstances, must take the risk of such care, and not an innocent passer-by."

In Speir v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664, the plaintiff was injured by the discharge of fireworks in a public street, and it was held that if the city directed or authorized the discharge of fireworks, which resulted in the injury complained of, it was liable; that the mayor of the city of Brooklyn had, by permit, authorized the fireworks to be discharged in the street under the provisions of an ordinance which gave him authority to grant such permit; and the court, in holding the defendant liable, said:

"In so doing, and in construing the ordinance as authorizing him to grant a permit to private persons to use the public streets for the discharge of fireworks, he was following the practice which had long prevailed, and, so far as appears, no question had been raised that such permits were not within the ordinance. The permit, when given and communicated to the police, was understood as preventing any police interference which the act permitted, and it had that effect in the case in question. The city had power to prohibit or regulate the use of fireworks within the city, and to enact ordinances upon the subject. The ordinances passed were not ultra vires, in the sense that it was not within the power or authority of the corporation to act in reference to the subject under any circumstances."

The same question was again before the Court of Appeals in the late case of Landau v. City of New York, 180 N. Y. 48, 72 N. E. 631, where the same rule laid down in the Cohen and Speir Cases was reiterated and applied.

These cases establish a proposition that, where a municipal corporation gives a permit to obstruct a street, an absolute duty is imposed upon the corporation to see to it that the obstruction is so

protected and guarded that a person using the street, and entitled to rely upon the presumption that it is safe for use, will be warned of the danger in time to avoid injury. By giving the permit, it thereby becomes a joint actor with the licensee in creating the obstruction, and the city thereby becomes responsible for any neglect or default of the licensee in properly guarding, so that persons using the street will not be exposed to unnecessary danger.

In Deming v. Terminal Railway of Buffalo, 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521, the question as to the liability of a corporation engaged in building a railroad in a public street for a neglect to properly guard an excavation by a contractor employed for the purpose of doing the work was considered; and, after an exhaustive review of the authorities in this state, it was held that the fact that the injury was caused by the negligence of the contractor did not relieve the person making the contract from liability. Most of the cases cited in that opinion to sustain the conclusion were against municipal corporations. I think it is now established beyond dispute that where an obstruction is placed in a street by a person acting under a contract with the municipal corporation, and the obstruction is placed in a street by direct permission of the corporation, the corporation is liable for any negligence of its contractor and licensee in protecting the public from any obstruction in the street. This would lead to the conclusion that, if the jury found that this obstruction was not properly guarded or lighted, both the defendant, the municipal corporation, that had authorized the obstruction to be created in the street, and the contractor, who had neglected to sufficiently protect it, were liable.

The learned counsel for the defendant also insists that the plaintiff's intestate was guilty, as matter of law, of contributory negligence; but this, I think, was a question for the jury. The plaintiff, in driving along the street, had a right to assume that the city of New York had performed its duty, and that the street was reasonably safe for travel. It was a dark night. The plaintiff's intestate must have seen the light upon the west side of the road, near the curb, upon the steam roller. He passed that in safety. Whether he saw the light that was upon the pile of stone, or could have seen it, under the circumstances, whether the light was sufficiently bright to enable him to see it when approaching from the north, or whether he, in the exercise of ordinary care, should, under the conditions existing, have seen this pile of stone and avoided it, were, I think, questions for the jury.

Counsel for the defendant also insists that it was error to admit as evidence the contract between the city and the contractor under which this paving in 153d street was being done, but I think the contract was clearly competent to show the relations that existed between the city and the person who had caused the obstruction.

The amount of the verdict is not objected to, and there are no other rulings that require consideration.

If these views are correct, it follows that the judgment and order must be affirmed, with costs.

O'BRIEN, J., concurs.  VAN BRUNT, P. J., dissents.

McLAUGHLIN, J. (concurring). I concur in the opinion of Mr. Justice INGRAHAM that the judgment should be affirmed. I do not agree with him, however, that the evidence would not have justified a finding that the pile of stone in the street, or some part of it, was placed there prior to the day preceding the accident, or that the judgment could not be affirmed if defendant's liability depended upon the negligent performance of the usual obligations imposed upon a municipality. On the contrary, I think the evidence would have justified a finding that the obstruction in the street had existed for several days, and that the city had either actual or constructive notice of it, and therefore was obligated either to remove it, or see the same was properly guarded. I agree with him that a notice, either actual or constructive, was not necessary, inasmuch as the city had by its permit authorized the contractor to pile the stone where it was, but, if such notice were necessary, then there was an abundance of evidence to go to the jury on that subject.

HATCH, J., concurs.