## Richmond.

PHILLIP C. MAPP v. DR. GRIFFIN W. HOLLAND AND JULIAN HOLLAND.

March 20, 1924.

Absent, Kelly, P.

1. STREETS AND HIGHWAYS—*Law of the Road—Traffic Regulations of the State Highway Commission—Right of Way where Vehicles Approach on "Intersecting Roads"—Junction and Crossing.*—Roads which merely make a junction, the one with the other, but which do not cross each other, are "intersecting roads" within the meaning of subsection (d) of section 9 of the rules and regulations of traffic, adopted by the State Highway Commission under the provisions of section 4, chapter 30, Acts 1919, which provides that all vehicles shall have "the right of way over others approaching in intersecting roads from the left, and shall give the right of way to those approaching from the right."

2. STREETS AND HIGHWAYS—*Law of the Road—Traffic Regulations of the State Highway Commission—Right of Way where Vehicles Approach on "Intersecting Roads"—"Intersect."*—Webster's dictionary defines the word "intersect" as having as one of its meanings that of "to cut into," etc.; "to cut into another," etc., and the word "intersection" as meaning, geometrically, "the point or line in which one line or surface cuts into another." As the object of the rule or regulation in regard to the right of way where roads intersect of the State Highway Commission (section 9, subsection (d) of the rules and regulations of traffic on State highways) is to prevent collision between conflicting traffic over the highways of the State, and as the danger of collision between traffic, at the junction of roads, is the same in character as at cross-roads, in so far as the danger arises from lack of determination of which line of traffic has the right of way when both cannot pass in safety at the same time, the words "intersecting roads," as used in the rule or regulation in question, embraces the junction of roads as well as cross-roads.

3. INTERPRETATION AND CONSTRUCTION—*Mischief to be Remedied—Statutes.*—Knowing the mischief sought to be remedied, the language of the writing, if it admits of it, is to be construed so as to embrace all situations in which the mischief is found to exist.

Error to a judgment of the Circuit Court of North-
amption county, in a proceeding by motion for a judg-
ment for damages. Judgment for defendants. Plaintiff
assigns error.

*Reversed and new trial awarded.*

This is an action brought by the plaintiff in error,
Phillip C. Mapp (hereinafter called plaintiff), seeking
to recover of the defendants in error, Dr. Griffin W. Hol-
land and Julian Holland (hereinafter called defendants,
or referred to individually), damages resulting from a
collision of the automobile belonging to Dr. Holland,
being driven at the time by his son, Julian, with the
automobile of the plaintiff, driven by the latter, at the
junction of the Savage Neck public road with the East-
ville-Cape Charles public road, being both State high-
ways, as seems to have been a *concessum* in the case.
The Mapp automobile came from the former and turned
into the latter road, *en route* in the direction of Eastville.
The Holland automobile was traveling on the latter
road, *en route* in the direction of Cape Charles.

There was a verdict and judgment for the defendants
and the plaintiff assigns error.

The evidence for the plaintiff and defendant was con-
flicting upon the following questions: "Whether by the
exercise of reasonable care, the defendant, Julian Hol-
land, could have seen or heard the signal of approach of
the Mapp automobile, before it came out of the mouth
of the Savage Neck road, when the Holland automobile
was sufficiently far away to have slackened its speed, or
to have stopped, in time to have avoided the collision,
and whether the plaintiff was guilty of such contribu-
tory negligence, after he saw the Holland automobile
approaching—which was before the Mapp automobile
came out of the Savage Neck road—in not yielding the

right of way to the Holland automobile, as to bar re-
covery?" According to the testimony for the plaintiff,
the defendant, Julian Holland, by the exercise of reason-
able care, could have seen the Mapp automobile just
before it came out of the mouth of the Savage Neck road
and could have then heard the signal of its approach, in
time for him to have given the right of way to the Mapp
automobile, and to have thus avoided the collision.

The junction of the roads, and the directions in which
the respective automobiles were traveling immediately
preceding the collision, are shown by the following dia-
gram:

North.

Savage Neck Road

Mapp Auto

Holland Auto

Toward Eastville

EASTVILLE-CAPE CHARLES ROAD

Toward Cape Charles

Subsection (d) of section 9 of the rules and regulations of traffic on State highways, adopted by the State Highway Commission May 25, 1920, under the provisions of section 4, chapter 30, Acts 1919, proved in evidence, which was in effect at the time of said accident, is, so far as material, as follows:

"(d) All vehicles * * * shall have the right of way over others approaching in intersecting roads from the left, and shall give the right of way to those approaching from the right."

The trial court refused to give the following instruction asked for by the plaintiff:

"1. The court instructs the jury that all automobiles shall have the right of way over others approaching on intersecting roads from the left, and shall give the right of way to those approaching from the right, and if they believe from the evidence that the plaintiff and defendant were each approaching the intersection of the Savage Neck road and the main highway running from Eastville to Cape Charles in automobiles, and the said defendant was approaching said intersection while traveling on the main highway aforesaid from the plaintiff's left, who was traveling on the said Savage Neck road, then it was the duty of the defendant to give the right of way to the plaintiff."

The court gave the following instruction as asked for by the defendants, over the objection of the plaintiff:

"2. The court instructs the jury that a road or street which starts from, or terminates in, another does not intersect said other; and that section "D" of rules and regulations controlling traffic on State highways, adopted by the State Highway Commission, May 25, 1920, is not applicable to this case, and is not to be considered by the jury in reaching its verdict."

Among other instructions, given without objection,

either on the part of the plaintiff or defendants, was the following:

"4. The court instructs the jury that even if they believe from the evidence that the defendant was negligent, yet if they further believe from the evidence that the plaintiff (after seeing defendant's car) could, by exercising due care, have stopped his car and avoided the injury, then they must find for the defendant."

*S. James Turlington,* for the plaintiff in error.

*Mears & Mears* and *J. Brooks Mapp,* for the defendants in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

Whether the defendant, Julian Holland, was guilty of actionable negligence, and whether the plaintiff was guilty of such contributory negligence as barred recovery, were issues in the case; and the fact that the plaintiff had the right of way, if he did have it, was a material circumstance in the plaintiff's favor, which he had the right to have the jury consider as bearing upon both of such issues. The refusal of instruction 1, asked for by the plaintiff, and the giving of instruction 2, objected to by the plaintiff, when the latter is read along with instruction 4, which was also given, took from the plaintiff this right; and, indeed, in effect, instructed the jury that the defendant had the right of way, since the last named instruction directed the jury to find for the defendant, if they believed from the evidence that the plaintiff after seeing the approach of the defendant's automobile could have stopped—that is to say, that it was the duty of the plaintiff to stop and give the defendant's automobile the right of way upon the mere seeing its approach.

Hence, on the appeal, the case turns upon the decision of the following questions:

[1] 1. Are the roads above mentioned (which merely made a junction, the one with the other, and did not constitute a road crossing, or a cross-roads, as commonly spoken of) "intersecting roads," within the meaning of subsection (d) of the rules and regulations of traffic, mentioned in the statement preceding this opinion?

[2, 3] The question must be answered in the affirmative.

Webster's dictionary defines the word "intersect" as having as one of its meanings that of "to cut into," etc.; "to cut into another," etc.; and the word "intersection" as meaning, geometrically, "the point or line in which one line or surface cuts into another."

As the object of the rule or regulation in question is to prevent collision between conflicting traffic over the highways of the State; and as the danger of collision between traffic, at the junction of roads, is the same in character at the junction of roads as at cross-roads, in so far as the danger arises from lack of determination of which line of traffic has the right of way when both cannot pass in safety at the same time, we are of opinion that the words "intersecting roads," as used in the rule or regulation in question, embraces the junction of roads as well as cross-roads. This construction of the language in question results from the application of one of the settled cardinal rules applicable to the interpretation of statutes and other writings having a remedial purpose. Knowing the mischief sought to be remedied, the language of the writing, if it admits of it, is to be construed so as to embrace all situations in which the mischief is found to exist.

If, therefore, we were without specific authority to

support our holding above, we would not hesitate to reach upon principle the conclusion we have reached, as above stated.

But we are not without decisions to sustain our holding—one closely analogous and two directly in point.

In *Holman* v. *Ivins*, a Minnesota case decided November 10, 1921, published in 150 Minn. 285, 184 N. W. 1026, 21 A. L. R. 964, the court said:

"Summit avenue runs east and west, and has a fifty-five foot driveway for some distance on both sides of where MacKubin street enters it from the north. The latter street goes no further south than to Summit. Plaintiff was driving his automobile westerly on Summit avenue, approaching MacKubin street, when defendant driving easterly on that avenue was nearing the same street. The latter turned to go north upon Mac-Kubin street; but the right front spring of plaintiff's car caught in the right rear wheel of defendant's, and both vehicles were considerably damaged. Plaintiff sued to recover the damages resulting to him from the collision, and defendant answered, denying responsibility and counterclaiming for the damages he sustained. Plaintiff recovered. Defendant appeals from the order denying a new trial.

"The only error assigned questions the propriety of submitting for the jury's consideration the statute reading: 'The driver of any vehicle approaching or crossing a street or highway intersection shall give the right of way to any other vehicle approaching from his right on the intersecting street or highway, and shall have the right of way at such crossing over any vehicle approaching from his left on such intersecting street or highway.' Section 2552, G. S. 1913, as amended by the addition of subdivision 2 in section 22, c. 119, p. 164, Laws 1917 (Gen. St. Supp. 1917, par. 2552).

"The claim of the defendant is that the statute does not apply, because MacKubin street ends at Summit avenue, and does not continue on to the south. At places where two streets cross, there is a space common to both, on which space the traveler must yield the right of way to any one approaching on his right. So we think there is a space in common to both streets where one street opens into another only on one side. The space to the north of the center line of Summit avenue, and within the east and west line of Mac-Kubin street extended, is such a space. As soon as defendant turned towards this space plaintiff was approaching to defendant's right, and the latter's duty was to yield the right of way. Again, plaintiff, traveling on Summit avenue westerly, and on the north half thereof, was bound to give the right of way to one driving south on MacKubin street into Summit avenue. There is an intersection, at least as to the northerly half of the space in common there would have been, had MacKubin street continued to the south. We are of the opinion that the north half of Summit avenue must be held to be intersected by MacKubin street, and hence the statute quoted was properly applied. Indeed, the situation calls for the observance of the rule of the statute even more urgently than where both streets pass on beyond."

In *Manly* v. *Abernathy*, 167 N. C. 220, 83 S. E. pages 343–345 (decided November 11, 1914), it is said:

"The case turns upon the applicability of Public Laws of 1913, c. 107, at page 188, which reads as follows: (1) When 'approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching any intersection highway or a curve, or a corner in a highway where the operator's view is obstructed, every person operat-

ing a motor vehicle shall slow down and give a timely signal with his bell, horn, or other device for signaling'; and (2) when approaching an intersecting highway, a bridge, dam, sharp curve, or steep descent, and also in traversing such intersecting highway, bridge, dam, curve or descent, a person operating a motor vehicle shall have it under control and operate it at such speed, not to exceed seven miles an hour, having regard to the traffic then on such highway and the safety of the public. The court charged that the second branch of the statute did not apply to the facts of this case, and defendant (appellee), in his well prepared brief, stated that the instruction was given to the jury 'because the accident did not take place at an *intersection* of a highway, but in front of Walker & Co.'s mill,' which is not at a place, as he contends, where one street enters into, or connects with, or crosses another street, and for the further reason that 'West Market street enters into the street which runs by Walker & Co.'s mill, but said West Market street does not *cross* the other (Settle) street, and therefore is not an intersecting street, within the meaning of the statute. * * * * * * * * * * * *'

"Webster defines the word 'intersect' as follows: 'To cut into or between', and, secondly, 'to cut or cross mutually.' The ordinary meaning may be 'to cross,' but its true sense, in the particulary statute or writing, must be ascertained by a full reference to the context in which the word appears.

"It would violate the elementary rule of construction not to construe it in that way, for we are told that the words in a statute are to be construed with reference to its subject-matter, and the objects sought to be attained (23 Am. & Eng. Encyc. of Law 332), *Brewer* v. *Blougher*, 14 Pet. 178, 10 L. Ed. 408; Sedg. St. &

Const. Law, 359, as well as the legislative purpose in enacting it; and its language should receive that construction which will render it harmonious with that purpose rather than that which will defeat it.' (*Id.* 319, *Taylor* v. *Washington County*, 67 Ind. 383; *People* v. *Lacombe*, 99 N. Y. 43, 1 N. E. 599.) When uncertain, its general intent, as gathered from the statute, furnishes a key by which its ambiguities may be solved and thus its words given that meaning which will harmonize with the intent. Suth. St. Const. §§218, 219. Conditions with reference to the subject matter of the act, which it is apparent from its context it was necessary to provide for, may also be considered in ascertaining which is meant by that which is apparently ambiguous. *People* v. *Lacombe*, *supra*; 17 Am. & Eng. Ency. of Law (2nd ed.), p. 33.

"We are clearly of the opinion that the legislature intended to use the word in the sense of 'joining' or 'touching,' or 'coming in contact with,' or 'entering into,' and did not intend that the word 'intersect' should be so restricted in its meaning as not to protect pedestrians and other persons using a public street, at a point or space where another street comes into it, although it does not cross it. We should, therefore, give the word its broader meaning, which will include all space made by the junction of streets, where accidents were just as likely to occur, as where the two streets cross each other. Like reason doth make like law (*ubi eadem ratio, ibi eadem lex*), and 'then is the law most worthy of approval when it is consonant to reason.' Broom's Legal Maxims (6th Am. Ed.), pp. 122, 123, and cases in note, which illustrate the maxim and show the nature and extent of its application. We have seen that the word 'intersects' is defined by Dr. Webster 'to cut into one another,'

and also 'to meet and cross each other'; and an illustration of the latter meaning of the term is found in the intersection of any two lines or any two diameters of a circle at its center, but the latter is not its only signification, as the former part of the definition is to be taken into account and given its proper weight in the solution of the disputed question. 'To cut into' deos not necessarily mean to divide by crossing between two objects, but may rightly be construed as entering into but not passing beyond, and, as thus reasonably understood, it embraces the open space or place made by the entrance of Settle street into the larger street, known as West Market, just as a tributary enters or flows into the main stream without crossing it; the point of confluence being that of the intersection of the two streams."

And in *Hayes* v. *State*, a Georgia case (decided July 23, 1912), 11 Ga. App. 380, 75 S. E. page 527, Judge Pottle speaking for the court said: "The further point is made that the charge contained in the first count in the indictment was not sustained, for the reason that the two streets named in the indictment did not cross or intersect each other as alleged in the indictment, but that one of the streets ended at the point where it touched the other. It is contended that this is not a 'crossing or intersecting of highways,' within the meaning of the act of 1919, and does not support the allegation in the indictment that the homicide occurred at the point where Gordon and Holderness streets cross and intersect. We cannot assent to this view. On the contrary, we think that the two streets did intersect each other, within the meaning and purpose of the law. Manifestly the object of section 5 of the act was to protect persons who might be upon a highway which approached another highway along which an

automobile was being driven. There would be just as much reason for holding that one of the streets ended at the farther margin of the other street as there would be in saying that it ended when it touched the first margin of the street. The highway was in a condition to be used by pedestrians and others entirely across the other highway upon which the automobile was being driven. The latter highway extended across the margin of the former highway, and the case is plainly within the spirit and reason of the law."

The following cases are relied on for the defendants as containing a contrary holding, namely: *Atwood* v. *Connecticut Co.*, 82 Conn. 539, 74 Atl. 899; *Pacific Paving Co.* v. *Verso*, 12 Cal. App. 362, 107 Pac. 590; *Godfrey* v. *City of New York*, 93 N. Y. Supp. 899, 104 App. Div. 357; *Charbonneau* v. *Nassau, etc., R. Co.*, 123 App. Div. 531, 108 N. Y. Supp. 105; *Bonner* v. *Terre Haute, etc., R. Co.*, 151 Fed. 985, 81 C. C. A. 476; and *Va. Ry. & P. Co.* v. *Hill*, 120 Va. 397, 91 S. E. 194.

Of these cases, it is sufficient to say that none of them involve any writing the purpose of which was to determine and ordain, as between conflicting traffic, what vehicles had the right of way. Hence we do not regard them as in point or analogous. In the last two cases cited, in so far as they could be regarded as material to the question we have under consideration, are adverse to the defendants, in this. In the case last cited the opinion assumes and treats the mere junction of two railroads as an "intersection" of them, and the case next to the last cited holds that where a street car is standing on the end of a street car line starting from the same street along which another street car line runs—the former, not even touching the latter line—the street car is "at the intersection" of the two street car lines, and that the words "at the

intersection" of the lines did not mean at the crossing of the lines.

The case will be reversed and a new trial awarded, to be had not in conflict with the views above expressed.

*Reversed and new trial awarded.*