THADDEUS GOSS, by His Next Friend, T. R. GOSS, v. WARREN R. WILLIAMS.

(Filed 24 October, 1928.)

1. **Husband and Wife—Rights, Duties, and Liabilities—Liability of Husband for Negligence of Wife in Driving "Family Car"—Agency.**

   Where the husband is the owner of an automobile which he permits to be used for family purposes, and while in such use by his wife she permits another to drive it, and remains with such driver on the front seat, and by the negligence of the one driving a child is struck and injured: *Held,* the negligence of the driver acting under the control and authority of the wife is the wife's negligence, and the husband is responsible, in damages for the injury if proximately caused thereby, under the implied agency of the wife, under the "family-use" doctrine.

2. **Trial—Taking Case or Question from Jury—Nonsuit.**

   Defendant's motion as of nonsuit upon the evidence will be denied if there is any sufficient evidence, testified to by either the plaintiff's or defendant's witnesses, circumstantial or otherwise, viewed in the light most favorable to the plaintiff, to take the issue to the jury for determination. C. S., 567.

3. **Appeal and Error—Nature and Grounds for Appellate Jurisdiction.**

   The jurisdiction of the Supreme Court on appeal is confined to matters of law or legal inference, properly presented, appearing in the record. Const., Art. IV, sec. 8.

4. **Highways—Regulation and Use for Travel—Use of Highway and Law of the Road—Evidence.**

   Where damages are sought for the negligent driving of an automobile on the wrong side of the highway in violation of statute, evidence of this

fact may be shown upon the trial by the tracks made by the automobile at the place, broken glass from the reflectors, and the blood of the person injured in the collision.

**5. Same—Intersections—Negligence.**

Under the provisions of C. S., 2598, as amended by chapter 148, section 1 (p), Public Laws of 1927, where one public highway joins another but does not cross it, the point where they join is an intersection of public highways within the meaning of the statute.

**6. Same—Statutes.**

Under the provisions of C. S., 2616, 2618, amended by Public Laws 1925, it is negligence *per se* for one to drive his automobile more than fifteen miles per hour in traversing an intersection of highways when the driver's view is obstructed for one hundred feet therefrom, and damages may be recovered for its violation when the proximate cause of the injury: *Held*, the amendment of 1927, reducing the distance from 100 feet to 50 feet has no retroactive or continuing effect.

**7. Same—Degree of Care—Children.**

One driving an automobile upon a highway is not relieved of liability by the fact alone that a seven-year-old child ran before his automobile suddenly and without previous indication, for the law requires him to use due care, especially in regard to children, to avoid the injury between the time he saw, or by the exercise of proper care, he should have seen the child, and the time of the injury.

**8. Jury—Competency of Jurors, Challenges and Objections—Challenges to the Favor.**

Where a defendant in a personal-injury suit carries indemnity insurance, in passing upon the jury it is not error for the trial judge to permit the defendant's attorney to ask for his information only, whether the juror challenged was an agent or representative of the indemnity company, the question being restricted to this purpose openly by the court, and the refusal of the trial court to grant a new trial upon this ground is not reversible error.

Brogden, J., dissenting.

Appeal by defendant from *Sinclair, J.,* at November Term, 1927, of Wake. No error.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was plaintiff injured by the negligence of defendant, as alleged? Answer: Yes.

"2. What damage, if any, is plaintiff entitled to recover? Answer: $3,000."

This is an action for actionable negligence brought by Thaddeus Goss, a minor, through his father, T. R. Goss, his next friend, against the defendant Warren R. Williams.

The plaintiff contends that the defendant, Warren R. Williams, lives in Sanford, N. C., and was the owner of a Buick sedan No. 35560. That

his family consists of himself, his wife and five children. On Wednesday, 16 March, 1927, defendant's wife, Mrs. Warren R. Williams, drove the car to Raleigh, N. C., with Mrs. J. F. Foster, Mrs. C. L. Williams, and Mrs. W. R. Makepeace. They went to Raleigh to shop. On the return trip they left Raleigh about 5 o'clock, and Mrs. W. R. Makepeace drove the car, with Mrs. Warren R. Williams' permission, who sat on the front seat with her and the others sitting on the back seat. About two miles south of Apex, on the way to Sanford, the car Mrs. W. R. Makepeace was driving struck the plaintiff, Thaddeus Goss, a minor between 7 and 8 years old, and seriously and permanently injured him. That Mrs. W. R. Makepeace was driving the car about 30 to 35 miles an hour. The highway, route No. 50, at the place of the injury to the boy, runs practically north and south, and was about 40 feet wide, and straight along where the injury occurred going towards Sanford for a long distance. That the Riggs road was a public road and intersects with route No. 50, entering from the west. The Carl Barker house was on the right-hand side of highway No. 50, going south and Thaddeus Goss' father's house on the left-hand side, and was reached by a pathway up an embankment, just opposite the Riggs public road, which intersects with highway No. 50; that Thaddeus Goss was with his sister, Mary Goss. She stopped at the Barker house to talk to Mrs. Barker, being in the edge of the Riggs public road; that Thaddeus walked by her to cross route No. 50 and go up the pathway to his father's house. When he left her he was traveling at a slow gait. Mary Goss testified: "I heard no horn blow"; that he had to cross the highway, which was about 40 feet wide, and he had reached within 3 feet of the other side of route No. 50, and was within about the same distance of the path, when he was suddenly, without any warning, struck by defendant's automobile; that the left-hand light of the car driven by Mrs. Makepeace was turned around and the glass over it was "bursted out," indicating that the left of the car struck the boy, and the car was on the left instead of being on the right of the center of the road; that the track of the car indicated that it was on the left of the road some 100 feet going south before it struck the boy; that a pile of glass, as much as a handful, was on the road 3 or 4 feet from the embankment on the left-hand side of route No. 50 going towards Sanford. The glass was about in front of the pathway. There was blood also on the left-hand side of the road going towards Sanford, where the glass was. The blood was along the road 23 steps in a southern direction from the glass; that after being struck the boy was carried by the car twenty-three steps southward, where he was dropped off, and then the car turned to the right-hand side of the road and stopped, some 100 feet below the Riggs public road where it intersects with route No. 50; that the car was being very rapidly driven and left the center of route No. 50 and turned to the left 100 feet from where it

GOSS *v.* WILLIAMS.

struck him. The car, at the speed it was running could have been stopped, and defendant's witness testified was stopped, within 40 to 50 feet. The path leading to the Goss house was almost directly opposite the intersection of the Riggs public road with route No. 50.

One of plaintiff's witnesses testified in regard to tracking the car, and said: "I noticed a car that came around about 100 feet up the road coming over on the left-hand side and struck something and turned and went back to the right-hand side of the road."

Defendant's contentions were to the contrary. The car was being carefully driven on the right-hand side of the road going towards Sanford. The brakes were in good order. The glass on the left-hand light was not broken. The Riggs public road was obscured by an embankment. That Thaddeus Goss, the plaintiff, ran down an embankment, 3 or 4 feet high—was running. "A little boy ran out of the edge of the embankment, just like he came out of the air, and he was running, and ran right off in front of the car. . . . When he emerged from behind the embankment and he did not stop running. He just ran down the embankment and in front of the car."

The defendant in the court below made numerous exceptions and assignments of error. The material facts and assignments of error will be considered in the opinion.

*Percy J. Olive and J. C. Little for plaintiff.*
*Allen & Duncan, Winston & Brassfield, A. A. F. Seawell and Murray Allen for defendant.*

CLARKSON, J. The defendant moved for judgment as in case of nonsuit at the close of plaintiff's evidence and at the conclusion of all the evidence. C. S., 567. The evidence on the part of plaintiff was circumstantial in its nature, but sufficient to be submitted to the jury. The probative force was for them to determine.

"It is the settled rule of practice and the accepted position in this jurisdiction that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is 'entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.' " *Christman v. Hilliard,* 167 N. C., p. 6; *Oil Co. v. Hunt,* 187 N. C., p. 159; *Davis v. Long,* 189 N. C., 131; *Nash v. Royster,* 189 N. C., 410; *Smith v. Ritch, ante,* at p. 74.

This Court's jurisdiction is confined to review, upon appeal of "any decision of the courts below, upon any matters of law or legal inference." Const. N. C., Art. IV, sec. 8.

We think there are several important propositions of law for this Court to determine:

1. "Whether liability of the owner for negligent operation of a 'family purpose' car arises when the car is being used by the wife of the owner and driven by a third person by permission of the wife of the owner, the latter being present in the car on a seat beside her?"

In *Watts v. Lefler,* 190 N. C., at p. 725-6, this Court said: "The father—the owner of the automobile and the head of the family—has the authority to say by whom, when and where his automobile shall be driven or he can forbid the use altogether. With full knowledge of an instrumentality of this kind, he turns over the machine to his family for 'family use.' When he does this, under the 'family doctrine,' which applies in this State, he is held responsible for the negligent operation of the machine he has entrusted to the members of his family."

In the instant case, under the "family purpose" doctrine rule, which prevails in this jurisdiction, if the wife was actually operating the car negligently, and the negligence was the proximate cause of the injury, her husband would be liable. She was sitting on the front seat, having turned the wheel over to one of the shopping party. Under the "family purpose" doctrine rule, the wife had control and authority over the car, and over the driver, and, in contemplation of law, the negligence of the driver was her negligence, which fastened liability on the defendant owner of the automobile. Could it be said that if she tired of driving and turned the wheel over to a helper, an instrumentality of this kind, that liability upon the owner for negligent operation would not arise? We think not. Under the circumstances, there is an implied agency that fastens liability on the owner.

It is a matter of common knowledge that the father; the head of the family, the owner of the automobile, when he turns a car like the one in question, a Buick sedan, over to his wife for use, that she does not ride in it alone, but usually rides with friends. Especially is this so on a trip of some distance, the driver becomes tired or for other causes the wheel is frequently turned over to some member of the party. Under such circumstances as in the present case, the wife having the control, authority and direction over the car, and she in turn permits one of the party to run it and sits on the front seat beside her, the owner of the car impliedly consents, the agency is extended, the driver is a helper and the owner will be held liable for actionable negligence on the part of the person at the wheel. See *Albritton v. Hill,* 190 N. C., 429.

In *Ulman v. Linderman,* 44 N. D., at p. 40 (10 A. L. R., p. 1440), it is said: "The question is, therefore, squarely presented, upon these allegations, of the liability of the owner for the negligent act of the stranger. If, at the time of the accident, the wife of the defendant were

driving the car for purposes of the owner's business (and the pleasure of the family is a business of the master), the husband would have been liable for its negligent operation (citing numerous authorities). . . . Is the husband still liable, as master or upon principles of agency, where the wife, authorized to operate the car, permits or directs, in her presence and stead, that the car be operated negligently by a stranger, for purposes of the business of the master? In such or similar cases a long line of authorities have held a liability to attach to the master. In many cases this holding is based upon the reasoning that the stranger is a mere instrumentality by which the servant or agent performs his duties, a longer arm which the servant or agent wields and controls; that the master's business is being performed, therefore, by the agent or servant through the stranger in question," citing numerous authorities.

The "family purpose" doctrine is recognized in Kentucky. In *Thixton v. Palmer,* 210 Ky., p. 638, it is held: That where a mother had allowed her son the use of an automobile to take a friend and two girls riding, she would be responsible for injuries resulting from negligence of the friend, whom the son had permitted to drive while he rode in the back seat. Annotated in 44 A. L. R., p. 1379.

In the case of *Kayser v. Van Nest,* 125 Minn., 277, 146 N. W., 1091, 51 L. R. A. (N. S.), 970, a father kept an automobile for the pleasure of his family. It was usually driven by his daughter, nineteen years of age. On the occasion of the accident, while driving she was joined by a party of young people, and she permitted a cousin to drive the car. The Court in that case said: "The daughter remained in the car, and, although not personally operating it, had not relinquished control over it, nor turned it over to another to use for his own purposes. It was still being used in furtherance of the purpose for which she had taken it out." *Thixton v. Palmer, supra.*

*Cardozo, C. J.,* in *Grant v. Knepfer,* 245 N. Y., 158, 54 A. L. R., at p. 848-9, says: "The statute may be said in a general way to have brought about the same results as had been attained in some other jurisdiction without reference to any statute by the so-called doctrine of 'the family automobile.' *Ibid.; Ferris v. Sterling,* 214 N. Y., 249, at p. 252, 108 N. E., 406, Ann. Cas., 1916D, 1161. Only a narrow construction would permit us now to say that an owner placing a car in the care of members of his family to be used for their pleasure or for the family business would escape liability if wife or son or daughter should give over the wheel to the management of a friend. The ruling has been more liberal whenever the question has come up," citing the cases heretofore quoted.

The question is for the first time presented to this Court. The common law is elastic to meet the complex problems of the age as they arise,

but courts should be slow and not enter the realm of legislation. Last year 22,160 people were killed in automobile accidents on the highways of the United States. In North Carolina, the last year, 571 were killed. During the first six months of this year 262 people in North Carolina were killed in automobile accidents, or an average of about one and a half a day, while an additional 2,088 were injured. The State total of motor cars on 1 August, 1928, was 440,258. Passenger cars numbered 396,295; trucks 43,963. State average, one motor car to every 6.6 inhabitants.

Human life is too cheap and restraint is necessary. The numbers killed and crippled each year are appalling. It is necessary, in reason, for the courts to hold the owners of automobiles, when they turn over an instrumentality of this kind to the family for family use, to strict accountability. This is one of the means to safeguard the public. The head is usually the one of financial responsibility—at least he is the owner of the instrumentality. Upon the principles cited, consonant with natural justice, he should be held responsible.

This principle does not extend to an automobile loaned to another.

In *Reich v. Cone,* 180 N. C., at p. 268, it is said: "When a motor car is used by one to whom it is loaned for his own purposes, no liability attaches to the lender unless, possibly, when the lender knew that the borrower was incompetent, and that injury might occur." *Tyson v. Frutchey,* 194 N. C., p. 750.

2. Is it permissible to admit testimony as to the location of certain glass and blood and also tracks of the automobile on the highway as evidence? We think so. There was sufficient indentification that the tracks of the automobile were made by defendant's car, and the glass and blood were along the route of the automobile after it struck the boy.

In 42 C. J., part section 1023, page 1223, it is said: "Evidence of the physical conditions existing at the scene of the accident or collision is ordinarily admissible." *Kepley v. Kirk,* 191 N. C., 690; *Mitchell v. Atkins,* 192 N. C., 376.

3. The defendant assigned error that the court below instructed the jury as follows: "You are instructed as a matter of law that from the evidence in this case the juncture of the State highway No. 50 and the road testified to as the 'Riggs' road or 'Green Level' road constituted intersecting highways within the meaning of the law." We think this charge correct. All the evidence was to the effect that the Riggs road was a public road. *S. v. Haynie,* 169 N. C., at p. 282. The wording of the charge was not prejudicial.

C. S., 2598, in part, is as follows: "The term 'public highway' or 'highways' shall be construed to mean any public highway, township, county or State road, or any county road, any public street, alley, park, parkway, drive or public place in any city, village or town."

Public Laws 1927, ch. 148, sec. 1 (p), defines "Intersection" as follows: "The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." *Manly v. Abernathy,* 167 N. C., 220; *Mount Olive v. R. R.,* 188 N. C., 332; *Davis v. Long,* 189 N. C., 129; *Fowler v. Underwood,* 193 N. C., 402.

Webster's Dictionary defines the word "Intersect" as having as one of its meaning that of "to cut into," etc.; "to cut into another," etc., and the word "Intersection" as meaning geometrically, "the point or line in which one line or surface cuts into another." The words "intersecting roads" therefore embrace the junction of roads as well as crossroads. *Mapp v. Holland,* 138 Va., 519, 122 S. E., 430; Vartanian, Law of Automobiles, Part II, ch. 1, p. 414, note.

The injury complained of occurred on 16 March, 1927. The uniform motor vehicle operation act was passed by the General Assembly of 1927 and went into effect on 1 July, 1927. It repealed "all laws and clauses of laws in conflict." The decisions of this Court defining "intersection" prior, are substantially in accord with the definition given by the act.

. 4. The defendant assigned error that the court below instructed the jury as follows: "You are instructed that if a driver of a motor vehicle traverses an intersecting highway at a rate of speed greater than fifteen miles per hour, he does so in violation of law and in such cases would be guilty of negligence *per se.* You are instructed that a driver's view is obstructed at intersecting highways when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

In *Newton v. Texas Co.,* 180 N. C., at p. 565, it is held: "The violation of a statute, or an ordinance, is negligence *per se,* or rather, to speak more accurately, it is itself a distinct wrong in law, and all that is needed to make it an actionable wrong is the essential element of proximate cause, for 'wrong and damage' constitute a good cause if there be a causal connection between them." *Stultz v. Thomas,* 182 N. C., 470; *Davis v. Long, supra; Albritton v. Hill, supra.*

C. S., 2618, amended by chapter 272, Public Laws 1925, is as follows: "No person shall operate a motor vehicle upon the public highways of this State recklessly, or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic, and use of the highway, or so as to endanger the property or the life or limb of any person: *Provided,* that no person shall operate a motor vehicle on any public highway, road or street of this State at a rate of speed in excess of: . . . (D)

GOSS *v.* WILLIAMS.

Fifteen miles per hour in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view upon all of the highways entering such intersection for a distance of two hundred feet from such intersection." Under the Laws of 1927, ch. 148, *supra,* Art. II, sec. 4 (3) changes this and says: "Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed." This act went into effect after the injury in the present case.

5. Defendant assigned error that the court instructed the jury as follows: "The law requires every person operating an automobile upon a public highway to use that degree of care that a reasonably careful person would use under like or similar circumstances to prevent injury or death to persons on or traveling over, upon or across such highways, and any person so operating an automobile when approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersecting highway, or a corner in a highway when the operator's view is obstructed, shall slow down and give a timely signal with his bell, horn or other device for signaling, and the failure of any person so operating such motor vehicle so to do is negligence."

C. S., 2616, in part, is as follows: "Upon approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, and upon approaching an intersecting highway or a curve, or a corner in a highway where the operator's view is obstructed, every person operating a motor vehicle shall slow down and give a timely signal with his bell, horn, or other device for signaling." The court below charged substantially in the language of the statute.

6. The defendant assigned error that the court instructed the jury as follows: "You are instructed that even though the injured party through his own negligence placed himself in a position of peril, he may recover if the one who injured him discovers, or by the exercise of ordinary care could have discovered him in time to have avoided the injury. The defendant would not be relieved of liability by reason of the fact that he did not see him, but the law holds him to the responsibility of seeing what he could have seen by keeping a reasonably vigilant and proper lookout. You are instructed that the mere fact that a child runs in front of a moving motor vehicle so suddenly that the driver had no notice of danger, does not necessarily relieve a defendant from liability. There still remains the question whether the negligent driving of the automobile made it impossible for the driver to avoid the accident after seeing the child, or when by the exercise of reasonable care, such driver

could have seen the child in time to avoid the injury, there being a greater degree of watchfulness and care required of automobile drivers as to children than adults." It may be noted that defendant tendered no issue as to contributory negligence.

In *S. v. Gray,* 180 N. C., at p. 701, it is said: "The vigilance and care required of the operator of an automobile vary in respect to persons of different ages and physical conditions. He must increase his exertions in order to avoid danger to children, whom he may see, or by the exercise of reasonable care should see, on or near the highway. More than ordinary care is required in such cases. *Deputy v. Kimmell,* 80 S. E. (W. Va.), 919; 8 N. & C. Cases, 369."

"Children, wherever they go, must be expected to act upon childish instincts and impulses, and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly." *Cooley, C. J.,* in *Power v. Harlaw,* 57 Mich., 107; *Loughlin v. Penn. R. R. Co.,* 240 Pa. St. Rep., at p. 179; *S. v. Gash,* 177 N. C., at p. 598; *Hoggard v. R. R.,* 194 N. C., at p. 259.

On the facts and circumstances of the case, we do not think the assignment of error can be sustained.

7. In *Featherstone v. Cotton Mills,* 159 N. C., p. 431, it is said: "Under our decisions the stockholders, officers, or employees of the casualty company would not be impartial or competent jurors to determine the issue, and under all ordinary conditions the questions asked by counsel on the *voir dire* were not improper. *Norris v. Mills,* 154 N. C., 474; *Blevins v. Cotton Mills,* 150 N. C., 493."

In selecting the jury the following questions were asked the jurors by counsel for the plaintiff, over defendant's objection:

"Q. Gentlemen of the jury, as the jury is now constituted, is there any member of the jury that is interested as agent, or otherwise, in any automobile indemnity insurance company?"

After the question was propounded, the court said to the jury: "Gentlemen, that has nothing in the world to do with the merits of the case, and should not be regarded, and it is just a general question asked for the information of the counsel, and has nothing to do with the merits of the case." Defendant's counsel then moved for a *venire de novo* upon the ground that counsel for the plaintiff was permitted to make inquiry of the jury as above stated. Motion overruled and defendant excepted. Thereupon the court made the following entry: "The court finds as a fact that in private conference with counsel before any member of the jury was interrogated it was admitted by counsel for the defendant that the defendant did have indemnity insurance in the Maryland Casualty Company of Baltimore, Maryland, and that Mr. Charles E. Johnson, of Raleigh, is the agent of the company. The court further finds as a fact

MILLS *v.* REALTY CO.

that counsel for plaintiff propounded the question to the jury in good faith and merely for the purpose of ascertaining whether or not any member of the jury was the representative of or had any interest in the insurance company. The court also finds as a fact that counsel for the plaintiff stated before the question was asked the jury that they had no information that any member of the jury was the representative of, or had any interest in such indemnity company." After the jury was empaneled, the defendant's counsel moved that a juror be withdrawn and mistrial ordered. Motion overruled; defendant excepted.

In *Luttrell v. Hardin,* 193 N. C., at p. 269, it is said: "It has been repeatedly held that the fact that a defendant in an actionable negligence action carried indemnity insurance could not be shown on the trial. Such evidence is incompetent." *Smith v. Ritch, ante,* 72.

This principle should be adhered to, but frequently on the trial this fact creeps out in one way or another. The business of indemnity insurance has become, as a matter of common knowledge, a large and increasing one with a vast number of employees. As to whether the court below should, upon motion, order a new trial concerning the conduct of the trial, in matters of this kind, must be left largely to the sound discretion of the court below, within the limitations prescribed by law. *Fulcher v. Lumber Co.,* 191 N. C., p. 408, where the matter is thoroughly discussed. We do not think the assignments of error can be sustained.

There are other assignments of error we have not considered, as we do not think them material. No new questions of law. The case has been carefully considered here. The court below gave a clear and thorough charge covering every phase of the law applicable to the facts.

Every human aid was rendered the young lad after he was struck by the car by the women in the car. They are to be commended for their prompt and efficient service to the lad under trying circumstances. The jury have found the facts. In law, we find

No error.

BROGDEN, J., dissenting.