## TEXAS MUT. INS. CO. v. CURTIN.

### No. 13968.

United States Court of Appeals
Fifth Circuit.

June 24, 1952.

J. Elton Huckabay, Baton Rouge, La., for appellant.

Theo. F. Cangelosi, Horace C. Lane, Baton Rouge, La., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a judgment for the plaintiff, based upon a jury verdict, in an action to recover damages for personal injuries. The action was brought directly against the tort-feasor's insurance carrier, a procedure authorized in Louisiana where the action was instituted.

Scenic Highway, in Baton Rouge, Louisiana, extends in a north-south direction. It is a four lane highway consisting of two lanes for northbound traffic, having a total width of 21 feet, and two lanes for southbound traffic, with a total width of 21 feet. The east and west halves of the highway are divided by a slightly raised asphalt line, six inches wide, running longitudinally along the center of the highway. Chippewa Street, a two lane street, running in an east-west direction, intersects from the east, but does not extend beyond, the Scenic Highway. Traffic at the intersection is controlled by an automatic signal light. Scenic Highway being a principal thoroughfare, the "green" interval on the traffic light is longer on the Highway than on Chippewa Street, a fact known to plaintiff, who was familiar with the intersection.

At about dusk on a rainy December afternoon, when automobiles were using their headlights, plaintiff, wearing a dark grey suit, undertook to cross from the east to the west side of Scenic Highway, along a cross walk marked off for pedestrians crossing the south side of the intersection. Plaintiff started across on a green light. He glanced up at the light before starting across. Just as he reached the asphalt center line, or possibly a moment before, the green light facing him changed to amber, and when he was a few feet west of the center line it changed to red against him.

When the light changed to amber, plaintiff commenced to trot, in an effort to reach the west edge of the highway before southbound traffic began to move, but just before reaching there he was struck by a taxi proceeding south in the westerly lane of the highway. The taxi did not stop at the intersection, but continued across at about 13 miles per hour, entering the intersection just as the traffic light turned green for north-south traffic, but before plaintiff, who was then crossing the westerly lane, had time to reach a place of safety on the west side of the highway. Plaintiff saw the taxi that struck him when it was 35 to 50 feet north of him, and commenced to trot toward the west in an effort to get across ahead of the taxi. There is evidence that the taxi driver did not see plaintiff. The taxi was covered by a liability policy issued by defendant.

The principal question here is whether plaintiff, having entered the intersection on a green light authorizing him to proceed across from east to west, continued to have the right-of-way although the signal changed while plaintiff was in the act of crossing, and authorized north-south traffic to move.

An ordinance of the City of Baton Rouge, in effect at the time, Sec. 11(A), provides: " * * * Green or 'go': All traffic facing the signal may proceed, except that vehicular traffic shall yield the right of way to pedestrians lawfully within the intersection at the time such signal was exhibited."

Section 15(D) of the same ordinance provides: "At intersections where traffic is controlled by traffic control signals or police officers, drivers of vehicles shall yield

the right of way to pedestrians crossing or those who have started across the street on a green or 'go' signal, and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a green or 'go' signal, thus, pedestrians who see a 'go' signal and start across the street shall be permitted to cross even though the signal may have changed before he gets completely across, and such vehicle shall not proceed across the path of such pedestrian."

Under this ordinance, it is clear that plaintiff having entered the intersection when the light was in his favor, continued to have the right of way over opposing traffic until he had a reasonable opportunity to reach the opposite curb, even though the signal changed while he was in the act of crossing. One entering an intersection with a green light is entitled to pass across in safety, so long as he proceeds promptly and with due care for his own safety. The above quoted ordinance is declaratory of the general law, including that of Louisiana. Kirk v. Los Angeles R. Corp., 26 Cal.2d 833, 161 P.2d 673, 164 A.L.R. 1, and notes; Riddel v. Lyon, 124 Wash. 146, 213 P. 487, 37 A.L.R. 486, and notes; Railway Express Agency v. Little, 3 Cir., 50 F.2d 59, 75 A.L.R. 963, and notes. See also Schatz v. Kehoe, 15 La.App. 9, 131 So. 66, headnote 4.

The action of the taxi driver in entering the intersection, even on a green light, without affording plaintiff a reasonable opportunity to reach a place of safety, in the circumstances above recited, was a clear violation of the above quoted ordinance, from which circumstance negligence may be implied, though the inference is rebuttable. Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485. Compare Red Top Cab & Baggage Co. v. Masilotti, 5 Cir., 190 F.2d 668; Allen v. Hooper, 126 Fla. 458, 171 So. 513.

Though it does not cross Scenic Highway, Chippewa Street is an "intersecting" street within the meaning of the ordinance and the general rule above stated. Mapp v. Holland, 138 Va. 519, 122 S.E. 430, 37 A.L.R. 478.

Appellant asserts, however, that since plaintiff is held to due care for his own safety, in attempting to run to the west curb after discovering the approaching taxi he was guilty of contributory negligence, which would defeat a recovery. A pedestrian about to cross a street, as well as while crossing it, must exercise due care for his own safety in the circumstances and not walk heedlessly into approaching traffic. But when a pedestrian who has started to cross the street with a green light in a cross walk marked off for pedestrians is confronted with a change in the traffic signal when he is part way across, thus facing a dilemma, to be instantly decided, as to whether he will remain on the center line of the street, or will retreat and run the risk of injury from cars proceeding along the traffic lane he has already crossed, or will attempt to reach the opposite side of the street ahead of an approaching vehicle in the opposing line of traffic, presents a jury question as to whether the pedestrian's conduct in continuing across the street was compatible, in the circumstances, with the conduct of a person of ordinary prudence. The pedestrian thus caught in mid-intersection by changing signals, may assume that cross traffic thus released against him will exercise due care, and that he will be accorded a reasonable time to reach a place of safety. Horwitz v. Eurove, 129 Ohio St. 8, 193 N.E. 644, 96 A.L.R. 782, and notes; Kirk v. Los Angeles R. Corp., supra; Quaker City Cab Co. v. Fixter, 3 Cir., 4 F.2d 327. The question of contributory negligence was here submitted to the jury with appropriate instructions. The verdict is supported by the evidence.

Affirmed.