## Strader *v.* Monroe, Appellant.

*Negligence—Bridges—County bridge—Guard rail—Bicycle.*

In an action by a woman against a county to recover damages for personal injuries sustained in falling over the side of a bridge which had no guard rail, the questions of defendant's negligence, and the plaintiff's contributory negligence are for the jury, and a verdict and judgment for plaintiff will be sustained, where the evidence for the plaintiff tends to show that at the time of the accident plaintiff and her son, a boy about thirteen years old, were riding over the bridge on bicycles; that the boy was riding ahead, and obscured from his mother's view a loose plank on the floor of the bridge; that the boy went around the plank, and in doing so called his mother's attention to it, but too late, as her bicycle struck the plank, was diverted to one side, and before plaintiff could recover control of it, she went over the unprotected side of the bridge, fell fourteen feet on rocks below and broke her spine.

Argued March 11, 1902. Appeal, No. 336, Jan. T., 1901, by defendant from judgment of C. P. Monroe Co., Dec. Term, 1899, No. 9, on verdict for plaintiff in case of Henrietta Strader v. Monroe County. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CRAIG, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[We say to you, gentlemen of the jury, if the plaintiff knew of the existence of the obstruction, the plank on the bridge, or saw it before she reached it, or was careless in not observing it, and then carelessly or imprudently ran into it or on it and the accident resulted from such carelessness and imprudence, then she cannot recover. She must show you that she was reasonably careful and prudent as she rode across that bridge at the point of the accident. She must satisfy you of that first. If she has, then you may proceed to the second question.] [2]

[The county commissioners were bound to foresee and reasonably to provide against a common danger to ordinary travel on the bridge. It may be taken as a well known fact that bicycles when they strike obstructions in their path, even in the control

of expert riders, are apt to deviate from their course and take a sudden and erratic direction, unexpected by the riders; just as no one can foretell the conduct of a frightened horse. The absence of guard rails or barriers at the point of the accident would have been a protection from the danger of going over the bridge, no matter what the movements of a bicycle may be. Therefore the peculiar liability or habit, if you choose, of a bicycle being known, the commissioners ought to have put up the guard rails or barriers, and their neglect of duty in this particular was the proximate cause of the injury. Or to express the idea in another form: The aptness of bicycles to deviate from their course and to take sudden and unexpected directions when meeting obstructions in their path was ordinary knowledge and to be expected. If it were otherwise it would be extraordinary, because contrary to common observation and experience. The county commissioners should have guarded against that which was to be expected, and it will not excuse the negligence of the commissioners, or make that negligence the remote cause to assert that they could not foresee the peculiar aptness or freak of a bicycle to take sudden and unexpected courses when meeting obstacles in its path. The injury in the case must be the natural and probable consequence of the neglect to have had up guards or barriers, and the consequence is such as, under the surrounding circumstances of this case, might and ought to have been foreseen by the county commissioners.] [3]

Plaintiff presented these points:

1. It is the law of Pennsylvania that persons using bicycles on the public highways and bridges of the state are entitled to the same rights and subject to the same restrictions in the use thereof as are prescribed by law in the case of persons using carriages drawn by horses. *Answer:* We affirm that proposition. [4]

2. The plaintiff in the use of her bicycle on the bridge in question was not bound to use the carriage drive, but had the right to go over any part of the bridge open for travel. *Answer:* We affirm that proposition. [5]

7. Should the jury believe from the evidence that the plaintiff was not expert, or was inexperienced in the use of the wheel, yet, she had a legal right to use the bridge in question, with

her wheel and it was the duty of the county commissioners to have anticipated such use and provided for the same; and their failure to do so was negligence and the plaintiff is entitled to recover, provided she was not guilty of contributory negligence. *Answer:* Affirmed, if the jury believe that the plaintiff was not guilty of contributory negligence in the slightest degree. [6]

8. If the jury believe that the driveway of the bridge was planked with plank running crosswise, and was so rough and uneven, at and for a long time before August 8, 1899, as to be exceedingly uncomfortable (if not dangerous), for wheelmen; and if the jury further believe that the floor of the bridge between the rails of the car track was planked with plank running lengthwise, and thus an invitation held out to the public using bicycles to use the car track; and if the great majority of wheelman did use the track, then the plaintiff was not guilty of contributory negligence in using the track at the time she received the injury complained of. *Answer:* We affirm that proposition. [7]

Defendant's point was as follows:

Under all the evidence of the case the plaintiff cannot recover and the verdict must be in favor of the defendant. *Answer:* We negative that proposition, because if we affirmed it, then we would be obliged to take this from you entirely. There was a motion made here by the defendant at the conclusion of the plaintiff's testimony asking us to take this case from you; in other words that a compulsory nonsuit should be entered by the court. If we are in error about that, gentlemen of the jury, there is a higher court to correct us. Therefore we negative this point. As we understand the law we could not affirm it. If we did we would take this case entirely from your consideration. [8]

Verdict and judgment for plaintiff for $15,000. Defendant appealed.

*Errors assigned* were (2–8) above instructions, quoting them.

*Charles B. Staples,* of *Staples & Erdman,* with him *D. S. Lee* and *Eilenberger & Huffman,* for appellant.—It is incumbent upon plaintiff to establish a prima facie cause of action result-

ing from defendant's negligence, clear from contributory negligence, on her part: Lynch v. Erie City, 151 Pa. 380 ; Kohler v. Penna. R. R. Co., 135 Pa. 346.

As the case was presented to the jury plaintiff failed to show why she did not see this plank in a direct line ahead of her, when according to the testimony of herself and her son she could have seen it had she looked and paid attention to where she was going and could easily and safely have avoided it: Beer v. Clarion Twp., 17 Pa. Superior Ct. 537 ; Haven v. Pittsburg & Allegheny Bridge Co., 151 Pa. 620 ; Robb v. Connellsville Borough, 137 Pa. 42 ; Shallcross v. Philadelphia, 187 Pa. 143 ; Sullivan v. Consolidated Traction Co., 198 Pa. 187 ; Benton v. Philadelphia, 198 Pa. 396 ; Sutphen v. North Hempstead, 30 N. Y. Sup. 128 ; McCauley v. Philadelphia Traction Co., 13 Pa. Superior Ct. 354 ; Lumis v. Philadelphia Traction Co., 181 Pa. 276 ; Robertson v. Penna. R. R. Co., 180 Pa. 43.

*Rogers L. Burnett*, for appellee.—The case was for the jury : Davis v. Snyder Twp., 196 Pa. 275 ; Campbell v. City of York, 172 Pa. 222 ; Merriman v. Phillipsburg Borough, 158 Pa. 81 ; Kraut v. Frankford, etc., Pass. Ry. Co., 160 Pa. 334 ; Hey v. Philadelphia, 81 Pa. 50 ; Scott Twp. v. Montgomery, 95 Pa. 444 ; Closser v. Washington Twp., 11 Pa. Superior Ct. 125 ; Mechesney v. Unity Twp., 164 Pa. 359 ; Trexler v. Greenwich Twp., 168 Pa. 217.

OPINION BY MR. JUSTICE DEAN, May 19, 1902 :

The plaintiff and her son, the latter about thirteen years of age, residents of the borough of Stroudsburg, on August 8, 1899, while riding bicycles, had occasion to cross a county bridge over Brodhead creek, the boundary of the borough on the east. The bridge was of three spans, two of 101 feet each and one of 116 feet. The bridge was twenty-eight feet wide, including a six feet wide footway on the north side, then a driveway thirteen feet wide; then six feet for a street railway, and then an unoccupied strip about three feet wide to the edge ; the planks on the driveway were laid crosswise ; those between the rails of the street railway longitudinally, thus making the latter much the smoother way. The mother and son reached the bridge about half past seven in the evening and rode on the driveway about

two thirds of the way across; then concluded to return on the
planks between the rails because of the smoother condition of
the floor; about twelve feet from the west end of the bridge
the mother's bicycle struck a piece of loose plank, about twenty
by five inches, which had been used to patch a break or rut in
the floor; there was no guard rail from this point to where the
bridge ended, a distance of fifteen feet; by the force of collision
with the plank, she and her bicycle were precipitated over the
side of the bridge and they fell fourteen feet upon rocks below;
the fall broke her spine with the consequence, that she will be,
during life, a helpless invalid. She brought suit against the
county for damages, averring negligence on the part of defend-
ant in not keeping in repair the floor of the bridge, and in not
maintaining a guard rail at the side. The defendant answered,
that the proximate cause of the accident was the broken plank;
that this she could have seen if she had looked, 100 feet
distant; she was negligent if she did not look; if she looked
and saw it, she was negligent in not avoiding it, either by get-
ting over to the driveway, or by steering around it on the route
between the rails she had chosen. The court below, in an elab-
orate charge, submitted the evidence to the jury to find, first,
whether defendant was negligent in permitting the piece of
plank to remain for weeks, on the floor of the bridge, and
whether it negligently failed to protect the edge of the bridge
only five feet distant with a barrier or guard rail, and second,
whether plaintiff had contributed to the accident by her own
negligence in not seeing the plank when she ought to have seen
it, or if she did see it, in not using ordinary care to avoid it.
The jury found for plaintiff on both questions, and assessed her
damages at $15,000. If plaintiff was entitled to a verdict at
all, it could not, with plausibility, be argued, that the amount
was excessive. She was a comparatively young woman, only
thirty-nine years of age, in excellent health, earning a good sal-
ary in a manufacturing establishment; she is now incapacitated
for life.

As to her alleged contributory negligence, there was some
evidence to sustain the charge, but it was not of that undisputed
character, as appellant argues, to warrant the court in with-
drawing it from the jury. In view of it, it is scarcely worth
while to spend time in reviewing the elaborate discussion of

counsel, as to what was the remote or what the proximate cause of the accident.   If, it unquestionably appeared, that the piece of plank was the dominating cause, and therefore, the proximate one, and, that just as unquestionably, plaintiff was guilty of contributory negligence in permitting her bicycle to strike it, it would, perhaps, be material to discuss the threadbare subject of proximate and remote cause; but in this case, it is of no practical importance.   The court below spoke thus to the jury:

" She was bound, gentlemen of the jury, to ride her bicycle with reasonable care and caution.   She was bound to observe where she was going.   She was bound to take notice of obstacles that may have been in the way.   Now then was she exercising reasonable care and caution when she was riding her bicycle, in the manner in which she did ride it?   The evidence is, that the boy, her son, was from twelve to fourteen feet in front of her; that she was riding along following him; that they were riding slowly as the evidence describes, perhaps four to five miles an hour.   We think the testimony is to that effect; and that when her attention was called to the rut or the plank by her boy, who had passed it, by going around it, that she was then upon, or at this plank or obstruction, and lost the control of her bicycle, and the accident happened by reason of losing that control in passing that plank or obstacle."

This was the pith of the charge on the question of contributory negligence, and although in different language, was repeated over and over to the jury.   Undoubtedly, the cause of the deflection of the bicycle towards the edge of the bridge was the piece of plank, and if the occurrence had stopped there, it is highly probable, very slight, if any, injury to her would have resulted; but she went over the edge, fell fourteen feet to the rocks below and broke her spine; if the piece of plank caused the bicycle to turn, the absence of the guard rail was the cause of the serious injury.   If defendant was, as is scarcely denied, guilty of negligence in not maintaining a guard rail at that point, as the jury has found, and was guilty of negligence in permitting the piece of plank to remain on the floor of the bridge, as the jury has also found, and plaintiff was not guilty of contributory negligence, it helps us not in determin-

ing liability, to determine also, which of the two operating causes was the dominating one; it must pay if either was.

The only question remaining is, did the plaintiff disclose a case clear of contributory negligence? Not, did her case rest on clear and indubitable evidence, for in this issue, the law holds her up to no such measure of proof; but from all the evidence, might the jury, on fairly weighing it, find in her favor? She testified her son was fourteen or fifteen feet in advance of her; that he saw the plank and avoided it, but called out to her; when she heard him, she alleged she was at most only three feet from it, too late for her to change her course; it is argued, that the obstruction was conspicuous enough to be seen more than one hundred feet off; she replies, her boy was in front of her, and therefore, it could not be seen by her; she cannot say how far she could have seen it on her wheel, but she admits that she could have seen it a considerable distance off, if she had not been on a wheel. It is argued, that if the obstruction could have been seen 100 feet off, then the body of a small boy in front could not have shut off vision for that distance; or that when her boy warned her she could have suddenly dismounted, even if she could not have otherwise avoided the plank. There are, perhaps, inconsistencies in her testimony, but they certainly are not so glaring as to stamp it with untruthfulness; some of her answers to adroit and persistent cross-examination indicate, that she might have seen the obstruction and have avoided it; others, that she exercised all the care demanded by prudence, under the circumstances. When asked, what she did when her son called to her to look out, she answered:

"Before I had time to turn out for the bad place my wheel struck something and threw me off the wheel, and I knew that I was going down and I grabbed for the iron of the bridge to save myself, and instead of catching the iron of the bridge, I caught my wheel and pulled it on top of me, and that is the last I remember."

Taking her testimony, with all its inconsistencies, we cannot more clearly express our opinion, than by repeating what our Brother MITCHELL said in Ely v. Pittsburg, etc., Railway Company, 158 Pa. 233. In this case, Dr. Ely, the plaintiff, on whose testimony the case hinged, testified that he stopped

" within about forty feet of the track and listened for the train," then on cross-examination he admitted he could not see down the track from where he stopped; then, when his attention was called to the uselessness of looking at a point from which he could not see, his explanation was, that until he came within seventy feet of the track, he could see both up and down, because he was driving near it. Says Justice MITCHELL : " This testimony was contradictory and the net result of it by no means clear. On part of it, he was plainly entitled to go to the jury, on the other part of it, equally plainly he was not. Under these circumstances, the case must go to the jury, whose province it is, to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail." And so say we here; her testimony, notwithstanding its apparent inconsistencies, was for the jury; they had the witness before them in all her physical helplessness, with the nervousness incident to a shattered spine; they had every means of judging as to the truthfulness of her statement, not only from its matter but from her manner. The court was bound to submit it to them. In trials of fact, if it were required that all testimony should be consistent, either with itself, or that of other witnesses, but few cases would reach a jury. The learned judge committed no error in leaving the question of contributory negligence to the jury, and his instructions were quite as favorable to the defendant, as it had any right to ask.

What we have said, practically passes on appellant's eight assignments of error; they are all overruled and the judgment is affirmed.