# Parker v. Matheson Motor Car Company, Appellant.

*Negligence—Automobiles — Evidence — Conflicting evidence — Case for jury.*

1. Where by making due allowances for the position of a witness and the form of the questions and answers on cross-examination, it is possible to harmonize statements apparently conflicting with his testimony in chief and to draw justifiable inferences from the testimony as a whole, it is for the jury to say how they will find.

2. In an action of trespass to recover damages for personal in-

juries, resulting from the negligent driving of an automobile by defendant's employee the defense was that on the day of the accident, which was Sunday, the driver of the car was not acting within the scope of his employment, but was taking a pleasure trip, in no way connected with defendant's service; the driver, testifying for plaintiff, said that he was "testing" the car, which was new, that testing cars was his only duty, and that at times he worked on Sunday; on cross-examination, he said that he had asked for the car, that he was taking a pleasure trip, and had visited his home town; on re-examination he said that he was "running in" the car at the same time, by which was meant loosening it up, making necessary adjustments, etc., and that "it was understood" when defendant's foreman allowed him to take the car, that it was to be tested. *Held*, that the witness had not denied, retracted, or explained away his testimony given in chief, in such a way, or to such an extent, as would have justified the court in giving binding instructions for the defendant.

Argued April 15, 1913. Appeal, No. 56, Jan. T., 1913, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1911, No. 223, on verdict for plaintiff in case of Charles B. Parker v. Matheson Motor Car Company, (now in the hands of receivers). Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. Before LITTLE, P. J., specially presiding.

The material facts appear in the opinion of the Supreme Court; and the following is the abstract of testimony referred to in that opinion: Guy Reynolds testified in chief that he was employed by the defendants as a tester of cars; and when asked what other work he did for them at that time, he replied, "Nothing." He said that by testing cars was meant to "take the cars out on the road, run them for a couple of hundred miles to wear them in and see that they were adjusted properly"; that the car he was using at the time of the accident belonged to the defendant company and was "a chassis with a testing body," that is, "the body was just a crude body just made to put on the testing car"; that

the car had "never been driven until that Sunday";
that the car was a "test car," explaining he meant, "a
new car being tested out." When asked the question,
"On Sunday, May 1, 1910, were you testing that car?"
he replied, "I was testing it as well as using it for my
own use." In reply to the question, "Why did you go
to Wyalusing?" he said, "Well, I went up there for a
little pleasure ride and I stopped off there for dinner,
then I came back by way of Tunkhannock and stopped
at Factoryville, that is my home, for dinner, and came
on to Scranton that evening for supper." He likewise
said that John Dietrick, his foreman, gave him permis-
sion to take the car. On cross-examination, to the ques-
tion, "You were not sent out to test the car that day, I
understand you asked to have the car go up to your home
on a pleasure trip, that is true, is it?" He answered,
"That is true." When asked the question, "You did not
test the car that day under the direction of Mr. Dietrick,
or anybody connected with the Matheson Works, he
answered, "No," and in reply to the next question, "You
were merely taking a pleasure trip with this other gen-
tleman?" he said, "Yes, sir." Then on re-direct exam-
ination he was asked, "You say you took this trip for
testing it and for pleasure?" and replied, "Yes." Then
he was asked, "What do you mean by the pleasure part?"
and replied, "Well, I just mean that I used the car as if
it was my own that day, only I was running it in at the
same time;" after which he explained that the expres-
sion, "running it in" meant "loosening it up, making ad-
justments on it if needed." This was followed by the
question, "For whom were you doing that work?" to
which he replied that he was doing it for the defendant
company. On re-cross-examination he said that he and
his companion had made arrangements to go up to his
home and he had asked Dietrick for the car the day be-
fore, that the testing of a car included "running in";
and in response to the question, "In other words, you
could not take a car out on a pleasure trip without at

the same time giving the car some test?" he said, "Yes, sir." The question was then put, "Mr. Dietrick consented that you should take the car?" and he replied, "Yes"; then he was asked, "And at that time he did not tell you to take the car out to test it, did he?" and gave answer, "I do not remember he told me in particular, that was understood"; afterwards he plainly said that he did not remember whether or not Mr. Dietrick had told him that he wanted the car tested on that Sunday; but he admitted that at times he worked for the defendant company on Sundays, and he also said that he took automobiles out for testing "every day."

Verdict for plaintiff for $1,600, and judgment thereon. Defendant appealed.

*Errors assigned* were various instructions to the jury, the refusal of the court to direct a verdict for defendant, and to enter judgment for defendant non obstante veredicto.

*Robert J. Murray,* with him *James L. Lenahan* and *Charles B. Lenahan,* for appellants.

*A. C. Campbell,* with him *Frank E. Donnelly,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, June 27, 1913:

On Sunday, May 1, 1910, the plaintiff's horse was frightened by an automobile negligently operated by one Guy Reynolds, an employee of the defendant company. The vehicle in which the plaintiff was riding was overturned and he was thrown to the ground and injured. He sued for damages and recovered a verdict upon which judgment was entered in the court below. The assignments of error raise the broad question of the sufficiency of the evidence to show that at the time of the accident Reynolds was acting as the defendant's servant in such

a way and to such an extent as to fix it with liability for his negligence. The plaintiff called Reynolds to the stand and depended upon his testimony to prove that he was acting within the scope of his employment; and for the purposes of the present review the case is reduced to a consideration of the testimony of that witness. On this branch of the case the issue narrowed to the inquiry, Was the chauffeur at the time of the accident on a pleasure trip and incidentally testing the car for his employers, or was he on a testing tour and by permission of his employers combining therewith an incidental pleasure trip? The verdict comprehends a finding to the effect that the real purpose of the trip was to test the car; therefore, the pivotal point now is, Was the testimony depended upon by the plaintiff sufficient in detail and character to sustain such a finding?

A brief review of all the material evidence given by Reynolds upon the points before us will be found in the notes of the reporter published in connection herewith; therefrom, inter alia, the following facts helpful to the plaintiff's case definitely and plainly appear: (a) that Reynolds was employed as the servant of the defendant company to drive its cars; (b) that at the time of the accident his sole duty was to test cars; (c) that he worked for the defendant on Sundays when necessary; (d) that the particular car which he was using at the time of the accident belonged to the defendant and was being driven by Reynolds with the owner's knowledge and consent; (e) that the car had never been out before the day in question; (f) that on that day it was fitted up for testing purposes; (g) that Reynold's only companion on that day was a fellow-workman who was also a tester in the defendant's employ.

Reynolds said that he did not remember whether or not Mr. Dietrick, the defendant's foreman, had instructed him to test the car, but he added that it was understood that he should do so. His statement that "it was understood" standing alone would count for

nothing, but in connection with the plainly appearing facts in the case, it has some force, since it is consistent with the inference that the real purpose of the trip was to test the car. But aside from this item of testimony, on the aforementioned facts, without more, a jury would be justified in inferring that at the time of the accident Reynolds was operating the car for the defendant on a testing tour and his personal pleasure was merely an incidental feature of the trip; and that being so, the case presents the final question, did the witness in other parts of his testimony destroy its legal efficacy to sustain this inference.

The plaintiff brought out the facts which warrant the inference that the car was on a testing tour, and on cross-examination counsel for the defendant by a series of leading questions attempted to destroy the foundations of this inference and to show that the chauffeur had the car out primarily for his own pleasure. Although some of the categorical replies to several of these leading questions might apparently justify the belief that the cross-examination had accomplished its purpose, yet when the testimony of the witness is taken as a whole, it is far from clear that this is so. Reynolds did not deny, explain away or retract his testimony given in chief in such a way or to such an extent that one is obliged to say that no reasonable mind desiring solely to reach a just conclusion could draw the inferences contended for by the plaintiff; therefore, it was for the jury to determine what construction they would place upon the statements of the witness, what the net result of his testimony was, what inferences they would draw therefrom, and what conclusion they would reach thereon. In other words, the search for the truth did not develop such a conflict that a finding one way or the other would be a mere guess; it rather presented a condition of evidence, where, by making due allowances for the position of the witness and the form of the questions and answers on cross-examination, it was possible to harmonize ap-

parently conflicting statements, and to draw justifiable inferences from the testimony as a whole. Upon this state of the evidence it was for the jury to say how they would find, and the verdict shows that they drew their inferences as contended for by the plaintiff and decided that the main purpose of the trip was to test the car; from this they were justified in concluding that Reynolds was acting for the defendant within the scope of his employment at the time of the accident. All other essential points being duly covered by proper and competent proofs, this finding is sufficient to sustain the verdict and the judgment thereon.

The present case is not within Mulligan v. The Traction Co., 241 Pa. 139, where we ruled that a plaintiff is not entitled to go to a jury if in attempting to prove directly a fact or series of facts upon which his right depends, he makes conflicting statements that are so irreconcilable that a finding one way or the other would be a mere guess; nor is it within Black v. Rapid Transit Co., 239 Pa. 463, where we ruled that when a plaintiff makes conflicting statements which are expressly called to his attention, his final statement of fact is the one by which his case must be judged, and if that destroys his right of action the case cannot go to the jury; no more is it within the principle of the line of cases represented by Ely v. Railway Co., 158 Pa. 233; Glase v. Philadelphia, 169 Pa. 488; Strader v. Monroe County, 202 Pa. 626; Clark v. Lancaster, 229 Pa. 161; Cronmuller v. Evening Telegraph, 232 Pa. 14, wherein we lay down the rule that when by reason of conflicting statements the plaintiff's testimony leaves the question of his contributory negligence in doubt, since he has not the burden of proof on that issue, it is for the jury to decide the real facts in relation thereto, notwithstanding the conflict; it more nearly approaches the principle of Danko v. Pittsburgh Railways Co., 230 Pa. 295, p. 297, where "the court below was of opinion that the burden upon the plaintiffs to establish the defendant's negligence had not

been discharged, in view of the discrepant testimony of the only witness called to prove it." There, as here, the important witness was a third party, and in reversing we said, by our Brother BROWN, that the apparently conflicting answers of this witness given upon cross examination must be received and considered in connection with his other answers, and when·so considered a "fair inference" might be drawn from them in favor of the plaintiff.

As stated in 26 Cyc. (p. 1576, sec. 7, and p. 1533 sec. 4), "where the facts are in dispute, or more than one inference can be drawn therefrom," the issue whether or not the servant was acting for the defendant and within the scope of his employment is for the jury; and this in most cases is to be "determined by the jury from the surrounding facts and circumstances." In Brunner v. The American T. & T. Co., 151 Pa. 447, the plaintiff's horse was frightened through the explosion of a dynamite cap by an employee of the defendant company, and the defense was that the employee was not acting within the scope of his employment "but for his own amusement." It was contended by the plaintiff that the man who exploded the cap (Delaney) was doing it for another employee (Livingston), whose duty it was to handle such explosives. At p. 452, we said, "There was no direct evidence in support of this theory, but the learned judge submitted the question to the jury with the instruction that if they should find from the facts before them that the cap was exploded in the presence of Livingston and as a test of the usefulness of the caps ......they would be justified in finding in favor of the plaintiff." Notwithstanding that the testimony of both of these employees· "was strongly against the theory of the plaintiff" we said at p. 453, "the jury had the witnesses before them, and whether the inference was a fair one from all the testimony that Delaney was acting for and in the stead of Livingston in exploding the caps ......was for them to determine;" adding, "It is true

that the direct evidence is against the plaintiff's theory, but there was a basis......for the inference to rest upon ......; whether it was a sufficient basis was primarily for the jury." Also see, Guinney v. Hand, 153 Pa. 404; Schimpf v. Harris, 185 Pa. 46; Simmons v. Penna. R. R. Co., 199 Pa. 232; Brennan v. Merchant & Co., 205 Pa. 258; Marcus v. Gimbel, 231 Pa. 200; Bowling v. Roberts, 235 Pa. 89.

The learned court below well said, "The case at bar presents a different state of facts......and is to be distinguished from the cases cited by counsel for the defendant;" here, under the authorities, the proofs were sufficient to sustain the verdict. It is true that testimony was submitted by the defense which, if accepted by the jury, might have fully met the plaintiff's proofs; but "whether or not it (the plaintiff's case) was overcome by the testimony offered by the defendant was for the determination of the jury" (Moon v. Matthews, 227 Pa. 488, p. 493), and they by their verdict have found that it was not.

The assignments of error are overruled and the judgment is affirmed.