## PERUCCA et al. v. BALTIMORE & O. R. CO.
## CONTRELLA et ux. v. SAME.

Circuit Court of Appeals, Third Circuit.
October 3, 1929.

Nos. 3962, 3963.

Walter L. Dipple, of Pittsburgh, Pa., for appellants.

Wm. H. Eckert and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. The Stutz roadster of Pete M. Perucca, driven by his wife, Mary Perucca, was struck by a westbound engine as the car was passing from the south to the north, over the tracks of the defendant corporation, at a public crossing, in the borough of Sutersville in the state of Pennsylvania. The car was destroyed and the driver injured as a result. In the suit instituted by Perucca and his wife to recover damages for the injuries so sustained, the court below directed a verdict in favor of defendant upon the ground that, notwithstanding the testimony of Mrs. Perucca that she stopped, looked, and listened when the car was within a few feet of the southerly or east bound track, looked again when she was on the crossing, and notwithstanding the testimony of five other witnesses that the car stopped as testified to by Mrs. Perucca, the undisputed physical facts showed that Mrs. Perucca was guilty of contributory negligence in that she did not look, or looking and seeing took a chance. This act of the court is assigned as error.

With respect to the controlling principles of law, there is really no dispute between the parties. The duty of one about to cross the tracks of a railroad in the state of Pennsylvania has been frequently declared by the courts of that state. That law governs here. Delaware & Hudson Co. v. Nahas, 14 F.(2d) 56 (C. C. A. 3). It is sufficiently set out for the purpose of this case in New York Cent. & H. R. R. Co. v. Maidment (C. C. A. 3) 168 F. 21, 21 L. R. A. (N. S.) 794; Grimes v. Penna. R. Co., 289 Pa. 320, 137 A. 451; Radziemenski v. Baltimore & Ohio R. Co., 283 Pa. 182, 128 A. 735; and Cohen v. Phila. & Reading R. Co., 211 Pa. 227, 60 A. 729. These cases likewise disclose that upon a motion for a directed verdict the court may not decide disputed questions of fact and must give to the party against whom the motion is made the benefit of the most favorable inferences of which the testimony is reasonably susceptible. If the motion is made by the defendant, the court must give to the plaintiff the strongest, legitimate view of the evidence in his favor and disregard all countervailing evidence; but if the indisputable physical conditions, the uncontradicted external facts or mathematical tests and calculations based upon facts or factors that are fixed and certain, establish that the person injured could not have performed his legal duty, the oral testimony to the contrary must be ignored, and a verdict for the defendant directed.

The question for our decision here is solely whether the undisputed physical facts and conditions and mathematical tests and calculations, based upon facts fixed by the record with definiteness and precision, make certain that Mrs. Perucca could not have performed her legal duty as testified to by her and her five corroborating witnesses. The accident occurred at night. There was no rain, fog, mist, or snow. It was one day before full moon and the sky was partly cloudy. The crossing was not protected by gates or watchman. The tracks were upon the top of an embankment. The street leading to them from the south, over which Mrs. Perucca traveled, was narrow and unimproved. Its grade was found by actual

measurement of defendant's civil engineer to be "approximately 25 per cent." At eight rail lengths east of the crossing, the tracks began to curve in a northerly direction. As appears from the photograph thereof in evidence, the curve was a rather sharp one, limiting the distance to which the tracks were unobscured from the point 3 or 4 feet south of the east-bound track, at which six witnesses testified Mrs. Perucca stopped, to approximately 660 feet. From the crossing, the second point from which Mrs. Perucca testified she looked, the line of vision was unobstructed for 875 feet. The crossing was in the westerly outskirts of Sutersville. The main street of the town lay to the east. Adjoining the railroad on the south and southeast were a number of stores with well-lighted windows. On the northerly side, too, there were lighted windows. There was a light at the crossing. The engine's electric headlight was burning. Attached to the engine was a caboose only. Mrs. Perucca testified that the curtains were on the easterly or right-hand side of the car, and that when she stopped within 3 or 4 feet of the east-bound track, the right-hand door was opened at her request by Miss Contrella, who was riding with Mrs. Perucca as her guest and was killed, to enable them to hear better, and that after looking in both directions and seeing nothing, she put the machine in low gear and started over, and that when she was on the crossing she looked again and saw nothing. She did not know the speed of the car when she started across, but supposed it was 4 or 5 miles an hour and that it was 7 or 8 miles when the car was struck as it was crossing the west-bound track. The gauge of each track was 4 feet, 8½ inches. The distance between the tracks was 8 feet, 3½ inches. The distance from the southerly rail of the east-bound track to the northerly rail of the west-bound track was 17 feet, 8½ inches. The total distance from the point at which it was testified the car was stopped to the point at which it was struck was approximately 21 feet. The engine's speed was variously estimated. The highest estimate was "terribly fast, * * * well over fifty miles per hour." It ran about a thousand feet after the collision before it stopped. There was much evidence that there was no signal by whistle, bell, or otherwise of the engine's approach. The court below arrived at its conclusions by mathematical calculations showing that it would have taken the car traveling at 3 miles an hour only one-third the time to cross the tracks from the point at which it was said

to have stopped that it would have taken the engine traveling at 50 miles an hour to traverse the distance from the point at which it could first have been visible. It seems to us, however, that two of the four factors employed in the calculations—the speed of the car and the speed of the engine—were admittedly but estimates and lacked the certainty and inherent probative value necessary to destroy, as a matter of law, the affirmative and unqualified testimony of six witnesses that the car did stop. Again, according to the testimony, the car was not only stopped and out of gear, but the street on which it was stopped had a 25 per cent. grade—a rise of one foot for every four of the street's length. On such a grade, the front wheels of a car having only an 8-foot wheel base would be two feet higher than the rear wheels. It is common knowledge that cars are not so readily and quickly gotten under way on a steep upgrade as on a level road and that the starting requires more care. In the calculations leading to the directed verdict, the time required for the car to cross the tracks was based upon the assumption that the car moved forward at an average rate of 3 miles an hour from the very instant Mrs. Perucca looked to the east. No time was allowed for enmeshing the gears, releasing the brakes, engaging the clutch, and getting the car under way. We think no true crossing time after looking can be arrived at unless the starting time under the existing physical conditions is included. When included, we find nothing in the evidence disclosing, as a matter of law, that the car could or should have arrived at the point of collision within ten seconds or less after Mrs. Perucca looked to the east when the car was stopped. Yet, if defendant's engine was traveling only 50 miles per hour, or slightly less than 74 feet a second, instead of "well over fifty miles per hour" as testified by one witness, it was more than 660 feet away from the crossing and so, even nine seconds before the collision occurred, was not in view from the place at which the car was stopped. Consequently, we are of the opinion that neither the physical conditions nor any mathematical tests based upon reasonably certain factors establish, as a matter of law, that Mrs. Perrucca did not stop or, stopping, saw and took a chance on getting over.

■■ But the duty of exercising reasonable care on the part of Mrs. Perucca did not end with the stopping, looking, and listening 3 or 4 feet south of the east-bound track. That duty continued throughout the danger.

zone. Mrs. Perucca testified she looked eastwardly when she was on the east-bound track, that she could have stopped instantly and avoided injury had she seen the approaching engine, but that she did not see it. Having stopped at a place reasonably calculated to afford full opportunity for seeing and hearing an approaching train, Mrs. Perucca was not required, as a matter of law, to stop again when the front wheels of the car were between the rails of the east-bound track, for that was a place involving danger, much increased because of the steep grade upon which the rear wheels of the car would then have been and the consequent risk of stalling the engine of the car, particularly upon the approach of an east-bound train, in attempting to start the car from that position. See Chesapeake & O. Ry. Co. v. Steele, 84 F. 93 (C. C. A. 6). Had a stop been made at a point farther north, it would have been difficult, if not impossible, for the driver of the car to know whether or not the front of the car was within the overhang zone of a west-bound train. Under the law of Pennsylvania, the surrounding circumstances determine whether a failure to stop after going upon the tracks is or is not negligence. Cohen v. Phila. & Reading R. Co., supra. The circumstances here existing forbade such a stop unless made necessary by a west-bound train first seen from that point. Consequently, Mrs. Perucca cannot be said, as a matter of law, to have failed in her legal duty, if, after she had gotten the car under way and was crossing the tracks, she looked for approaching trains. She says she did look when she was crossing the east-bound track and saw nothing.

■ The court below was of the opinion that the undisputed fact that a person standing at that point would have in the daytime an unobstructed eastwardly view of the westbound track for a distance of upwards of 800 feet was a conclusive refutation of her statement that she looked and saw nothing. But is that fact so cogent and predominant, as a matter of law? Are the two statements wholly irreconcilable upon any reasonable hypothesis? It seems to us that they are not. As the law did not require that Mrs. Perucca stop the car upon the east-bound track to look, it did not require that she there give her undivided attention to looking. Though the car was moving slowly, she had little time in which to look. The car had a top over it. The curtains were on the easterly or right-hand side. Mrs. Perucca was seated at the wheel on the opposite side.

The light at the crossing prevented the engineer from seeing the beams of light from the lamps of the car. It is to be inferred that it, likewise, prevented the driver of the car, while looking ahead, from seeing the beam from the headlight of the engine. The collision occurred almost instantly after Mrs. Perucca looked to the east. Hence, at the time of looking the engine was not far away. Its beam, focused for long distances, it is reasonable to conceive, was above the top of the car and not visible from the driver's seat. Again, not every part of car curtains and top supports is transparent. We think it not possible to say, as a matter of law, that an opaque section did not blot out, even without the driver's knowing it, the particular spot of west-bound track upon which the engine was at the moment the driver looked. As, under the testimony, only a few seconds before, probably less than a sixth of a minute, she had stopped, had the car door opened, looked and listened for trains, and had seen none, she may even have seen some rays from the engine's headlight and, not being in the eye of its beam, have supposed them, from an instant's glance, to be coming from one of the many lighted windows along the track, and hence believed she saw "nothing."

While the law requires the driver of a car, after stopping, looking, and listening at a place near the crossing affording full opportunity for seeing and hearing approaching trains, to exercise care and vigilance to the extent of his opportunity until the act of crossing is completed and the danger zone passed, it does not require that he surmount the limitations upon his opportunity or make his mere want of perfect or more than natural sensibility synonymous with contributory negligence.

[8] By stipulation of the parties, the evidence in the Perucca case was made the evidence in the suit instituted against the railroad company by the parents of Miss Contrella, who was riding with Mrs. Perucca as her guest, to recover damages for her death. In this case, too, binding instructions were given in favor of the defendant. The duty and degree of care devolving at railroad crossings upon a gratuitous passenger in an automobile was stated by this court in Ryan v. Delaware, L. & W. R. Co., 8 F.(2d) 138, and in other cases therein cited. And it is, of course, true that the doctrine that a person losing her life must be presumed to have exercised due care has no application, if the evidence shows affirmatively the circumstances of the accident to

the contrary. Grimes v. Penna. R. Co., supra. But the evidence, which has been hereinbefore stated, does not enable us to say, as a matter of law, that Miss Contrella failed in the performance of her duty.

We think the evidence, considered in the light of the peculiar surrounding physical circumstances, make the question of contributory negligence in each case one of fact for a jury.

The judgments below must be reversed.