**RAILWAY EXPRESS AGENCY, Inc., v. LIT-
TLE.**

No. 4561.

Circuit Court of Appeals, Third Circuit.
May 4, 1931.

## Sur Motion for a New Trial.

This is an action for damages for personal injuries. The plaintiff's statement of claim alleges that, while crossing the street, she was negligently run down by the defendant's electric motortruck. The negligence charged is, among other things, failure to control the course, speed, and direction of the truck, and failure to regard the rights of the plaintiff in the lawful use of the highways and to allow the plaintiff sufficient time to reach a place of safety. The defendant might have asked for a more specific statement, but did not. The defendant filed no affidavit of defense, thereby admitting responsibility for the manner in which the truck alleged to have struck the plaintiff was operated, but not admitting that it struck the plaintiff or that it was operated in the manner averred in the statement. Flanigan v. McLean, 267 Pa. 553, 558, 110 A. 370; Charlap v. Lepow, 87 Pa. Super. Ct. 466; Wilson v. Adams Express Company, 72 Pa. Super. Ct. 384. At the trial the defendant offered no evidence, and the verdict was for the plaintiff.

Strictly speaking, there were no eyewitnesses. The plaintiff herself sustained a fractured skull and was unable to remember anything that had happened. Her case depended largely upon the testimony of two witnesses, a lady who was crossing the street with her, and a park guard who was directing traffic. Neither of these saw the actual manner in which the plaintiff received her injury.

There was some conflict between the statements of these witnesses in describing things which they both saw. The testimony of the plaintiff's companion contains apparent contradictions upon at least one point. However, it was the province of the jury to

reconcile conflicting statements in the plaintiff's evidence, whether of the same or of different witnesses, or to draw the line between them and say which shall prevail (Danko v. Pittsburgh Rys. Co., 230 Pa. 295, 297, 79 A. 511; Parker v. Matheson Motor Car Company, 241 Pa. 461, 467, 88 A. 653; Kohler v. Penna. R. Co., 135 Pa. 346, 19 A. 1049; Ely v. Pittsburgh, C., C. & St. L. Ry. Co., 158 Pa. 233, 27 A. 970; Strader v. Monroe County, 202 Pa. 626, 51 A. 1100; Zenzil v. D., L. & W. R. R. Co., 257 Pa. 473, 101 A. 809), unless, of course, the conflicting statements are so irreconcilable that a finding one way or the other would be a mere guess (Mulligan v. Lehigh Traction Company, 241 Pa. 139, 88 A. 318), which is clearly not the case here. The verdict for the plaintiff implies that the jury accepted that part of the evidence favorable to the plaintiff (Mackin v. Patterson, 270 Pa. 107, 112 A. 738), and that, where different inferences were possible, it drew those favorable to the plaintiff's case.

In view of these rules, it is permissible to construct from the plaintiff's evidence the version of the accident most favorable to her contention and to infer that the jury so found. So viewed, the facts of the plaintiff's case are as follows:

The accident occurred at quarter to 9 in the evening of September 18, 1929. That it was dark may be inferred from the fact that the headlights of the automobiles on the streets were lighted. At the place of the accident, Eighteenth street running north and south intersects the Parkway running diagonally southeast and northwest. There was no testimony as to the width of the streets or sidewalks, except that it appeared that Eighteenth street is wide enough to accommodate three automobiles side by side. Along the south side of the Parkway there is a curb and a paved footwalk for pedestrians. The footwalk does not extend from the curb to the building line, but there is a plot of grass of undetermined width extending along on either side of it. There is no evidence to show the total distance from the curb to the building line, which distance would include the footwalk and the two plots of grass. There is nothing in Eighteenth street by way of painted lines or staples or otherwise to define the crossing for pedestrians.

The traffic on Eighteenth street is north. At the time and place of the accident, traffic was controlled by a park guard who stood in the middle of the street intersection with white cape and gloves, starting and stopping traffic with arm signals only. The plaintiff and her companion, Mrs. Crowley, left the footwalk at the southeast corner of Eighteenth street and the Parkway and proceeded westwardly across Eighteenth street. The traffic direction was with them, and the north-bound vehicles on Eighteenth street were being held up by the arm signal of the guard. Two automobiles were standing in file on the east side of Eighteenth street, and the women passed in front of these. There were no automobiles near by in the car track. On the west side of Eighteenth street the defendant's automobile was halted some distance south of the curb line of the Parkway; there being no other cars in front of it.

While the plaintiff and her companion were in the act of crossing the street, and just as they were about to pass in front of the defendant's truck, the park guard turned, releasing the north-bound traffic on Eighteenth street. Before the plaintiff had time to reach the west side of Eighteenth street in safety, the defendant's car started and struck her, causing severe injury. At the time the plaintiff was struck she was upon the part of the street ordinarily used by pedestrians as a crossing.

The first contention of the defendant is that there is no evidence to support the jury's finding that the plaintiff was struck by its car, or, for that matter, by any motor vehicle. There was no mark or bruise on her body indicating that the wheels of a car had passed over her; her only injury being an exceptionally bad fracture of the skull. It is of course within the realm of possibility that she slipped or stumbled and sustained her injury by falling on the roadway. However, even under the narrowest view of the jury's right to find facts from circumstantial evidence (Cain v. Booth & Flinn, 294 Pa. 334, 144 A. 286), the finding that she was struck by the truck standing on the west side of the street was fully justified. Mrs. Crowley's testimony was: " * * * I seen this truck coming on me, and I looked at her like that, and she was about as far as to this from me (indicating), and when I got on the pavement, before I looked around I seen the truck coming down, she was on the north of me, she was on my right, and I made this jump and I reached on the curb, and with that I heard a scream. * * *" Again: " * * * The truck was stopped, parked there, I went to cross over when it moved, and as I said, there was only just a short ways off the curb on the west side of the street when the truck started, and I made

the jump. * * *" McCormick, the park guard, testified that, just after he turned to start traffic north on Eighteenth street, he saw the plaintiff lying "underneath the truck * ᵃ ᵃ between the wheels and the batter, the big battery box"; also that, in order to get the plaintiff out from under the truck, he asked the driver to back up a little "so that we could pull her from beneath the front of the truck." Bearing in mind that, under Mrs. Crowley's version of the facts, there were no other cars in motion near by which could have struck her, it can hardly be said that it is "equally probable (Flanigan v. McLean, supra) that the accident resulted from any cause other than the defendant's truck striking the plaintiff or that a finding that it did strike her was a mere guess.

Erbe v. Phila. R. T. Co., 256 Pa. 567, 100 A. 966, probably goes as far as any of the cases cited by the defendant on this point, but that case did not hold that the evidence was insufficient to support a finding that the plaintiff was struck by the defendant's car. What the court said was that, assuming that the plaintiff was struck, still the evidence was insufficient to show negligence. That is quite a different matter, and we may proceed to determine whether the evidence in the case now before the court shows negligence.

The mutual rights and duties of the parties in a situation such as this case presents are determined by two important matters of fact: First, the place at which the pedestrian was struck, whether on the crossing or in the roadway between crossings; and, second, the direction of the traffic control.

As to the first of these, the jury were instructed that, unless they found that the plaintiff was on the crossing when she was struck, there was nothing from which they could find negligence, and the verdict would have to be for the defendant. The defendant now argues that it is impossible that the plaintiff could have been on the crossing, basing his argument upon the testimony of the park guard who said that there were at least eight or ten cars halted three deep all the way across Eighteenth street, thus covering the entire crossing.

In view of the absence of any testimony as to the distance between the curb and the building line on the south side of the Parkway, or as to the width of the crossing ordinarily used by the pedestrians, I would not care to say that the conclusion drawn by the defendant follows· as a mathematical certainty from the guard's testimony. But, be that as it may, the conditions as pictured by Mrs. Crowley are entirely different. According to her testimony, there were only three cars halted on Eighteenth street near the intersection, two on the east side and the defendant's truck on the west side. As has been pointed out, the jury had the right to accept her testimony, and there is nothing in the facts as shown by her which militates against her positive testimony that they crossed at the crossing. Upon this point she said, "I was in the lower side of the crossing just right at the crossing ᶜ ᵃ * she (Mrs. Little) was to the right of me." The point marked by her on a rough sketch used at the trial shows that she reached the west side well within the lines of the footwalk on the crossing. The testimony of the park guard was to the effect that the front end of the truck as stopped with the plaintiff beneath it extended "maybe a couple of feet over" the footwalk. All this fully justifies the finding by the jury that the plaintiff was struck while on the crossing.

As to the traffic direction, it is practically undisputed that, when the plaintiff started to cross, she had the signal in her favor. This being so, she had the right of way over automobiles until she had reached the opposite curb, notwithstanding the fact that the signal changed while she was in the act of crossing. If the defendant's car moved forward with the signal without waiting for pedestrians properly on the crossing to get safely across, it was just as much a violation of traffic regulation as if it had moved against the signal.

■ A leading decision in Pennsylvania defining negligence of drivers of motorcars at crossings under traffic control is Gilles v. Leas, 282 Pa. 318, 127 A. 774, a case in which the traffic signal changed while the pedestrian was on the crossing. In the opinion the court said: "Some automobile drivers imagine this signal gives them a clear right of way against intersecting traffic; they start their machines recklessly and rapidly regardless of persons already in the driveway, terrifying if not actually striking them. It is a common occurrence for people to narrowly escape injury because of such carelessness. This misuse of the highway is just as culpable as if the drivers were using their cars at night without lights." If this is not a plain declaration of the law that it is negligence for a driver to start his car while persons who have started across the street with traffic signals in their favor are still in the act of crossing, it is difficult to see what is. If, as is contended for by the defendant, it is

necessary to a recovery to show additional evidence of negligence, such as excessive speed, failure to give warning, or the like, this vigorous statement is valueless except as good advice to motorists.

■ In Zandras v. Moffett, 286 Pa. 477, 133 A. 817, 818, 47 A. L. R. 699, the court said: "All drivers in congested areas with controls installed must be on the lookout for warnings which they have every reason to see displayed, when necessary, and to have their vehicles, whether light or heavy, under such management as will enable them to promptly obey signals given, which they are bound to discover, and must have seen, if due observation was made." Note the measure of control required. The driver must be able to obey the signal. Clearly he can be held guilty of negligence if he moves against it even though he proceeds slowly. Quoting again from Gilles v. Leas, supra: "If there is any superior right to use the highway under circumstances such as described in this case, it is with the pedestrian who is in the cartway. It is quite clear the traffic should not run him down when he is in full view. And when it does, even at a moderate or slow rate of speed, the driver lacks the control of his car necessary under the circumstances, and is chargeable with negligence." McAvoy v. Kromer, 277 Pa. 196, 120 A. 762, and Wiser v. Parkway Baking Company, 289 Pa. 565, 137 A. 797, cited by the defendant, were cases in which the accident did not happen at a crossing, and of course no question of traffic control was involved.

■ Of course it is the law, as argued by the defendant, that no inference of negligence is to be drawn from the mere happening of an accident, except in the limited class of cases in which the circumstances are such as to call for the application of the doctrine res ipsa loquitur. The rule of Gilles v. Leas, supra, does not involve a resort to that doctrine. Putting a motor vehicle in motion against traffic direction or regulation is substantive evidence of negligence, and, if there are any facts which excuse it, it is for the defendant to show them.

Thus the courts of Pennsylvania, whose decisions we are bound to follow [Western Union Telegraph Co. v. Kirby (C. C. A.) 37 F.(2d) 480; Perucca v. B. & O. R. Co. (C. C. A.) 35 F.(2d) 113; Delaware & Hudson Company v. Nahas (C. C. A.) 14 F.(2d) 56], have written into the law the salutary principle that disregard of traffic signals is of itself evidence of negligence. This principle is evolved from the necessities of modern traffic conditions, and is in accord with modern requirements. The position taken by the defendant would simply whittle away the rule.

■■ On the matter of contributory negligence the court's instructions to the jury were all if not more than the defendant was entitled to. In Newman v. Protective Motor Service Company, 298 Pa. 509, 148 A. 711, the court said that, " * * * in cases where the municipality maintains signals for controlling traffic, the signal in the pedestrian's favor, inviting him to cross, warrants his so doing, and he is justified in relying upon the assumption that motor vehicles, warned by the traffic signal set against them, will not disregard it and run him down," and expressly held that the plaintiffs crossing the street at a crossing with a light in their favor were not bound to continue to look for traffic at their right as they crossed. On other points the presumption of due care stands in the plaintiff's favor. Thus it is to be presumed that, if she saw the car, she did not deliberately walk in front of it, and that she did not walk so carelessly as to stumble and fall without cause other than her own negligence.

The defendant also complains of the answer of the court to the jury's request for additional instructions. Conceding that the statement of the law made by the court was correct, the defendant contends that, in order to avoid possible misunderstanding, the court should have repeated the instruction, already plainly given in the charge, that, unless the plaintiff was on the crossing when struck, there would be no evidence of negligence on the part of the driver and the verdict would have to be for the defendant.

■ The ordinary rule is that, if the charge in general correctly states the law, a party cannot complain of mere omissions unless a specific request has been made that the court charge upon the desired point. In this case, when the jury returned to the courtroom for instructions, counsel were absent, having stipulated that the verdict should be taken by the court and having expressly and of record waived the right to be present or be notified of the return of the jury. Under these circumstances, it was proper for the court to answer the jury's requests. Stewart v. Wyoming Cattle Ranche Company, 128 U. S. 383, 9 S. Ct. 101, 32 L. Ed. 439. The exceptions allowed were sufficient to protect the parties in the event of

an erroneous statement of the law by the court, but the defendant cannot now assign as error the court's failure to include an instruction which might have been given if the defendant had been present and asked for it.

The motion for a new trial is denied.

Lemuel B. Schofield and W. Bradley Ward, both of Philadelphia, Pa., for appellant.

Robert F. Bonner, of Philadelphia, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

PER CURIAM.

We find no errors in the proceedings and judgment below. Holding that the version of the accident which the trial court, for purposes of discussion, gave in its opinion denying the motion for a new trial was such as the jury could validly find from competent evidence in the case, and believing that the trial court in its opinion fully considered, and adequately expressed our views on, the main questions now here on appeal we affirm the judgment on Judge Kirkpatrick's opinion.