Mary HORTON, Plaintiff-Appellant,

v.

SWIFT & COMPANY, a Corporation, and Allen Cab Company, Inc., a Corporation, Defendants-Respondents.

No. 52665.

Supreme Court of Missouri, Division No. 1.

June 12, 1967.

Sherman Landau, and Robert L. Witherspoon, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Jaeckel and Robert E. Keaney, St. Louis, for respondent, Swift & Co.

Sam Weber and Alan B. Weber, St. Louis, for respondent, Allen Cab Co.

LAURANCE M. HYDE, Special Commissioner.

Action for $35,000.00 for personal injuries. At the close of plaintiff's evidence, the court directed a verdict for both defendants. Plaintiff has appealed from the judgment entered. Thus the issue is whether plaintiff made a submissible case against either defendant.

Plaintiff testified that, while standing on the northwest corner of the intersection of Dickson and Jefferson Streets in St. Louis, she decided it would be necessary to take a taxicab to make connection with the bus she had to take at another intersection to reach the place of her employment on time. When traffic on Jefferson was stopped by a traffic light, she saw a cab standing in the third southbound lane to the east (there were four southbound lanes) and "pointed to him I was going in the direction towards Franklin Avenue." Plaintiff said the taxi driver gave her a signal "to come on." To reach the cab, plaintiff had to walk in front of a Swift Packing Company truck standing in the second lane to the east (to the right of the taxi). There were four southbound lanes and there was evidence that there were vehicles in all of them. Plaintiff said when she passed in front of the truck (which the driver said was about four feet from the north line of the pedestrian crosswalk) the truck driver "was looking at me" and continued to look "when I turned to go down in between the truck and the cab." It also appears the truck had rear view mirrors. The truck was a closed body, two-and-a-half ton truck. Plaintiff further stated, "I opened the cab door to get in and the truck pulled up and knocked me to the ground." The door opened toward the front of the cab. Plaintiff's principal injury was to her right hand which she was using to open the door of the taxi. Plaintiff said she did not know whether her hand was caught between the cab door and the side of the truck (which seemed most likely from the nature of her injury), whether she fell on her hand or whether the truck ran over her hand. Plaintiff did not know what part of the truck came in contact with her.

Plaintiff could not estimate the distance between the truck and the cab except "there was room enough for me to walk down in between them, the truck and the cab." The only other testimony on this was an indefinite statement of the truck driver, who testified as follows: "Q About how far was that cab from your truck. Specifically, about what distance separated the side of the cab from the side of your truck? A Well, those markers, I guess they must be—probably be about, maybe, a foot and a half or two feet between the white lines and my—and the cab. [The white lines marked the pedestrian crossing.] Q And the cab reached the pedestrian crossing before you made your stop or did it come up after you made your stop? A I'm not sure about that. He must have come up around the side of me, but he was pretty well back, you know, the truck is a little bit longer than the car would be, and his front end—I mean his nose would be about where I was in the cab, see, it wouldn't be up even with me. Evidently wasn't. Q That is, the front end of the taxicab was not as far south as your position in the truck, is that true? A In the truck, no, I don't think so. Q Had you seen the taxicab at any time before this accident occurred? A No, sir, I didn't pay that close attention." Plaintiff said she did not know where the front bumper of the cab was with reference to the front bumper of the truck. The truck driver also said he did not see plaintiff at any time before she was injured; that he was watching the red light; that he "hadn't moved a foot" when he "heard somebody holler" ; and that he looked in his glass and saw plaintiff standing by the open door of the cab.

■■ Plaintiff's theory of liability of the cab company is that the cab driver was negligent in beckoning her out of a position of safety on the sidewalk and into a position of danger between the two vehicles. Plaintiff cites Miller v. Watkins, Mo.Sup., 355 S.W.2d 1, 90 A.L.R.2d 1426, in which the driver of a school bus, waiting for a boy to come to the bus from a house across the street, signalled a following truck "to come on through." In coming through the truck struck the boy running to the school bus. We held that " 'waving the truckdriver through' involved a foreseeable risk of, injury" to the boy under the circumstances of that case which included the school bus driver's knowledge of the propensity of the boy to run to the rear of the bus without looking for traffic. Plaintiff also cites 13 C.J.S. Carriers § 724, p. 1356 as to the duty of a carrier to a boarding passenger as to dangers which exist at other than a regular stopping place including danger from passing vehicles. However, the evidence herein shows all the cab driver did was to signal plaintiff to come on. This was an indication that he would wait for plaintiff to come to the cab; but it cannot reasonably be considered a direction to open the cab door at the time and in the situation she did it. Plaintiff knew the truck was there when she passed in front of it and she could see how far the side of the truck was from the cab. The cab driver had nothing to do with opening the door and there was nothing in the evidence to show that he knew or could have anticipated that plaintiff would open it with her hand between it and the side of the truck or open it close to the truck before the truck moved away. The rule is thus stated: "Where a second actor has or should have become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." Cohagan v. Laclede Steel Co., Mo.Sup., 317 S.W.2d 452, 457. Our view is that the cab driver's signal for plaintiff "to come on" from the sidewalk to the cab was not the proximate cause of her injury but instead her injury was caused by her act in opening the door so close to the truck and the movement of the truck at that time. In any event, as hereinafter stated, we conclude that plaintiff's conduct was contributory negligence as a matter of law.

■ Plaintiff's theory of liability against Swift is that its driver was negligent in starting its truck forward when plaintiff was in a position of danger and in failing to give a warning before starting. One trouble with this theory is that it is based at least partly on the view that the front of the cab was equal with the front of the truck. There is no evidence to so show. The truck driver said the front of the cab was back of his seat on the truck and plaintiff said she did not know where it was. It is true plaintiff's testimony that the truck driver was looking at her as she passed in front of it and turned to go along its left side (although denied by him) would be substantial evidence that he saw her, as he should have in the exercise of the proper degree of care. Nevertheless, she passed from his view in going back to the cab and thereafter he could have seen her only in his rear view mirror. Of course, he also had to watch the traffic signal to move when it changed, there being other traffic on this street.

■ Plaintiff cites Railway Express Agency v. Little, U.S.C.A.3rd, 50 F.2d 59, 61, 75 A.L.R. 963, holding that a pedestrian starting to cross a street with a favorable signal has the right of way over automobiles until reaching the opposite curb, saying: "If the defendant's car moved forward with the signal without waiting for pedestrians properly on the crossing to get safely across, it was just as much a violation of traffic regulation as if it had moved against the signal." However, that does not fit the facts of this case because plaintiff had

passed in front of the truck and was not going to the opposite curb but went to the taxi. It appears from all of the evidence that plaintiff would not have been injured if she had waited to open the cab door until after the traffic light changed and the truck had moved away. Plaintiff lived near the intersection involved, crossed it frequently to get a bus to her place of work, and she knew that traffic would move when the traffic light changed. Thus no warning signal from the truck was required to give notice to her when it would move.

■ Plaintiff also relies on House v. Brant, 323 Pa. 53, 185 A. 628, in which a large concrete mixer truck stopped in an alley less than nine feet wide and people were walking in a space of only about two feet between the right side of the truck and a building wall. The truck driver moved it forward and to the right without warning and plaintiff was pinioned between the right rear wheel of the truck and the wall. The driver did not look forward or to his right and gave no warning, looking only to his left. Judgment for plaintiff was affirmed. We have very different facts. There is nothing in the evidence to indicate that plaintiff would have been touched by the moving truck if she had not opened the cab door. Plaintiff said: "There was room enough for me to walk down between them, the truck and the cab." There is no evidence to show that the Swift truck did not move straight ahead. Our conclusion is (even if there was some negligence of the truck driver) that plaintiff's action in opening the cab door so close to the side of the truck, when the traffic light was about due to change, was contributory negligence as a matter of law.

We consider Louisville Taxicab & Transfer Co. v. Swift, 306 Ky. 618, 208 S.W.2d 944, to be a similar case. There the plaintiff went to a cab waiting at an intersection with three other cars for a traffic light to change. Plaintiff went to the cab, opened the door with the help of the driver getting in as the light changed. A car between the cab and the sidewalk moved with the light and in passing the cab "sideswiped" its partially open door fracturing a bone in plaintiff's leg. The court said: "Swift knew that the Broadway traffic light would change momentarily. He knew that the swirling traffic would soon engulf him if he tarried there in the deadly channel of its changing tide. He knew that the cars were lined up and waiting to hurry along the way. He knew that cabs, in the interest of public safety, had rules against opening their doors out in the no man's land of the vehicular battlefield furnished by a busy metropolitan thoroughfare. Yet, Swift, in his purpose of boarding this cab, left the pedestrian safety lane, discontinued his previous progress toward sidewalk security, took sufficient time to pass between cars and to open the cab door but somehow took insufficient time to close the door quickly behind his complete entrance. All of this constituted, as we see it, contributory negligence, in the exclusion of which there would necessarily have been exclusion of Swift's injury." Although there is nothing in this case about rules against opening cab doors out in the street, the cab driver in this case had nothing to do with opening the door, and we consider the act of plaintiff herein opening the cab door so close to a truck that she must have expected to move with the change of the light just as negligent as the conduct of the plaintiff in the Louisville Taxicab and Transfer Company case. See also Danzo v. Humfeld, Mo.Sup., 180 S.W.2d 722; Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W.2d 663; Annotation, 75 A.L.R.2d 988, 999.

The judgment is affirmed.

PER CURIAM: The foregoing opinion by HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.